## 49265. SOUTHERN GUARANTY INSURANCE COMPANY v. DUNCAN et al.

CLARK, Judge.

This marks the second appearance of this declaratory judgment action which was instituted by Southern Guaranty Insurance Co. on a standard homeowner's policy to determine if coverage existed under a factual situation which is indeed esoteric in nature. The respondent parties named as defendants are the insured and his 16-year-old neighbor who had filed suit against the insured for injuries claimed to have been received while on the insured's premises.

On its previous appearance (*Southern Guaranty Ins. Co. v. Duncan,* 129 Ga. App. 632 (200 SE2d 483)) this court was required to remand a ruling adverse to the insurer in order for the trial judge to make findings of fact and conclusions of law under the mandate of Code Ann. § 81A-152. Such review has now resulted in the court below reiterating that coverage exists. Once again the insurer has taken an appeal.

The findings of fact state the youngster is alleged to have been injured as the result of a piece of metal being projected into his eye because of the negligence of the homeowner while removing a steering wheel from an automobile on the insured's premises. "The automobile complained about and owned by Kenneth S. Duncan was a 1956 Chevrolet which had been adapted by him for use as 'a round track race car.' Said vehicle was on the insured's premises at the time of the alleged occurrence and was normally garaged on the Duncan premises and carried to the various race tracks on a trailer." We supplement these factual findings from the insured's deposition.

The insured testified he had been an auto mechanic for eleven years; that at the time of the alleged accident he was employed as a mechanic by a Newnan automobile dealer for whom he had worked for five years. (R. 55, 34). He further deposed that between the time he purchased the race car chassis in the summer of 1970 and the time of the alleged injury (approximately one year later) he raced the car about twelve times in Senora and Douglasville (R. 36, 37); that prize money was offered in these races regardless of whether or not the driver placed; and that he paid another individual to drive the car in some of the races. (R. 44). He further testified that the chassis (to which he subsequently added an engine and roll bars) had never had a vehicle registration or license tag during his ownership and had not since his purchase ever been driven on the highway under its own power, the transportation to and from the race tracks being by a trailer.

The insurer's denial of coverage was based upon two exclusion clauses in the policy. The first (1 a) reads: "This policy does not apply: . . .a. to bodily injury. . . arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . (2) any motor vehicle owned or operated by, or rented or loaned to any insured; but this subdivision (2) does not apply to bodily injury or property damage occurring on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises . . ."

The second exclusion clause (1d) states the policy does not apply "to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

As to the motor vehicle exclusion, the thrust of insurer's argument is that since the accident allegedly resulted from maintenance of an automobile which was neither "used exclusively" nor "kept in dead storage on the residence premises," exclusion 1a(2) is applicable. As to the "business pursuit" exclusion insurer asserts that having entered his automobile in various prize money races, and having occasionally paid another to drive the car in those races, insured was engaged in a "business pursuit," and, therefore, exclusion 1d is also applicable.

1. The fatal flaw to insurer's first defense is the definition in the policy of a "motor vehicle." This states that ". . . motor vehicle means a land motor vehicle, trailer or semi-trailer *designed for travel on public roads* (including any machinery or apparatus attached thereto) but does not include, except while being towed by or carried on a motor vehicle, any of the following: utility, boat, camp or home trailer, recreational motor vehicle, crawler or farm type tractor, farm implement or, *if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads."* (Emphasis supplied.)

As the insured's race car was driven only on a track, and never driven on a highway, and as the insured adapted a Chevrolet chassis for use as a "round track race car", the automobile failed to meet the policy definition of a "motor vehicle" since it was "not subject to motor vehicle registration" and was "designed for use principally off public roads." Therefore, the exclusion as to the maintenance of a motor vehicle (1a(2)) is not applicable.

2. The exclusion as to "business pursuits" (1 d) is also inapplicable. Again we refer to the terms of the policy. Although there is no express definition of "business pursuits," the policy defines "business" as "a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises

for any such purposes."

" 'Contracts of insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. [Cit.]" *Wallace v. Virginia Surety Co.,* 80 Ga. App. 50, 52 (55 SE2d 259); *State Farm Fire &c. Co. v. Rowland,* 111 Ga. App. 743 (143 SE2d 193). Dictionaries supply the "plain, ordinary, and popular sense." Webster's New International Dictionary (2d Ed.) gives these definitions: "Trade" is "The business one practices or the work in which one engages regularly"; "profession" is "The occupation. . . to which one devotes oneself"; and "occupation" is "That which occupies, or engages, the time and attention; the principal business of one's life." None of these would include the spare time racing interest of the insured, who was gainfully employed as a full-time mechanic, that being his trade, profession or occupation. Accordingly, the incident here which is the basis of the neighboring youngster's lawsuit is not pursuant to the insured's "business" and did not fall within the "business pursuits" exclusion. Compare *Badger Mutual Ins. Co. v. Hancock,* 116 Ga. App. 262 (157 SE2d 58).

3. "Where an insurance company seeks to invoke an exclusion contained in its policy, it has the burden of showing that the facts came within the exclusion. [Cit.]" *Darby v. Interstate &c. Ins. Co.,* 107 Ga. App. 409 (130 SE2d 360). See also *Hartford Accident &c. Co. v. Hulsey,* 109 Ga. App. 169 (2) (135 SE2d 494). Sub judice the insurer failed to meet this burden.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

Submitted April 1, 1974 — Decided May 9, 1974.

*Ross & Finch, A. Russell Blank,* for appellant.
*Lokey & Bowden, Glenn Frick,* for appellees.