FRANKENMUTH MUTUAL INSURANCE COMPANY v KOMPUS

Docket Nos. 65090, 65269, 66471, 66509, 66818, 69239. Submitted November 1, 1983, at Detroit.—Decided May 22, 1984. Leave to appeal applied for.

Dr. Larry L. Kompus, a psychiatrist, allegedly engaged in homosexual practices with several patients under the guise of therapy and was convicted of third-degree criminal sexual conduct. Five of the former patients filed lawsuits alleging assault, malpractice, and other claims. At various times during the period in which the incidents occurred Kompus had insurance coverage with several different insurers. These included homeowner's, commercial, special multi-peril, personal excess liability, and medical malpractice policies. A complaint for declaratory relief was filed by Frankenmuth Mutual Insurance Company and a cross-complaint was filed by Ohio Casualty Insurance Company and West American Insurance Company. The Oakland Circuit Court, Gene Schnelz, J., in a series of orders, held that several of the insurers had a duty to defend on various of the claims. Several appeals were filed, which were consolidated by the Court of Appeals. The issue on appeal is whether Frankenmuth Mutual, Aetna Life and Casualty Company, and West American have a duty to defend Kompus. *Held:*

1. The trial court found that Frankenmuth and Aetna had no duty to defend because of a "business pursuits" exclusion in each of their policies. The acts complained of did arise out of the business pursuits of Kompus, as they occurred during a doctor-patient relationship. However, without reaching the question of the business pursuits exclusion, coverage should have been denied under the basic terms of the Frankenmuth and Aetna policies because the acts complained of were not "occurrences" as defined in those policies, which define an

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 6] 43 Am Jur 2d, Insurance §§ 717, 726.

[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 95, 100.
Civil liability for physical measures undertaken in connection with treatment of mentally disordered patient. 8 ALR4th 464.
Civil liability of doctor or psychologist for having sexual relationship with patient. 33 ALR3d 1393.

[4, 5] 43 Am Jur 2d, Insurance § 559.

"occurrence" as an "accident". The acts were intentional and the injuries foreseeable. Therefore, the trial court, with regard to Frankenmuth and Aetna, reached the right result and that result will not be disturbed.

2. Similarly, West American had no duty to defend because of the intentional nature of the acts. The trial court erred in holding that West American had a duty to defend regarding several of the counts in the individual complaints.

3. The trial court erred in holding that Frankenmuth had a duty to defend as to one of the individual complaints, under its "commercial package" policy. Again, the acts complained of were not "occurrences" for purpose of the policy definitions. Also, those acts were excluded under a "professional service" exclusion to the extent that they constituted malpractice.

Affirmed in part, reversed in part, and remanded for entry of the appropriate orders.

1. INSURANCE — BUSINESS PURSUITS — CONTINUITY OF ACTIVITY — PROFIT MOTIVE.

A two-pronged test is applied to determine whether an activity is within the business pursuits of an insured: first, continuity; there must be a customary engagement or a stated occupation; and second, the profit motive; there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.

2. PHYSICIANS AND SURGEONS — MALPRACTICE.

A physician's engaging in sexual acts with a patient will support a claim of malpractice.

3. INSURANCE — BUSINESS PURSUITS — PROFIT MOTIVE.

The requirement of a profit motive in determining whether an activity is within the business pursuits of an insured requires that the complained-of acts be performed as part of the business or service normally performed by the insured for profit; the test is not so narrow as to require that the individual acts themselves be specifically performed for profit on an act-by-act basis.

4. INSURANCE — ACCIDENTS.

An accident, within the meaning of a policy of liability insurance, is anything that takes place without the insured's foresight or expectation and without design or intentional causation on his part; it is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unu-

sual, fortuitous, not anticipated, and not naturally to be expected.

5. TORTS — INJURY — INTENTIONAL ACTS.

An injury is not caused by accident where the injury is the natural result of an intentional act.

6. PHYSICIANS AND SURGEONS — INSURANCE — MALPRACTICE — EXCLUSIONS.

Acts of a physician, upon which a claim of malpractice arises and which clearly arose out of and during the doctor-patient relationship, are not covered under an insurance policy which excludes coverage for injury or property damage due to "the rendering of or failure to render any professional service".

*Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark* (by *Mark E. Morley*), for Frankenmuth Mutual Insurance Company.

*Collins, Einhorn & Farrell, P.C.* (by *Brian Einhorn* and *Noreen L. Slank*), for Aetna Life & Casualty Company.

*Zeff & Zeff, P.C.* (by *Patrick J. Bruetsch*), for Alfred Mallett, Robert J. Hoag and Rodger L. Ennes.

*Moll, Desenberg, Bayer & Behrendt* (by *Jon P. Desenberg*), for The Medical Protective Company.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pederson* (by *D. J. Watters* and *Mary Catherine Rentz*), for Vigilant Insurance Company.

*Bell & Hertler* (by *David C. Hertler*), for West American Insurance Company.

Before: BRONSON, P.J., and SHEPHERD and J. P. SWALLOW,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. This is a consolidated appeal as of right by several insurance companies and individuals pursuant to GCR 1963, 518.2. The appeals arose out of several orders declaring respective duties to defendant Dr. Larry Kompus, the insured, by the insurance companies involved.

During the period from 1973 to 1979, Kompus allegedly engaged in homosexual practices with several of his patients under the guise of therapy. Kompus was convicted of third-degree criminal sexual conduct in connection with these activities. Lawsuits alleging assault, malpractice and other claims were filed against Kompus by five former patients: defendants Mallett, Hoag, Ennes, Stroud, and Winter.

The following insurance policies were in effect at the time of the alleged occurrences:

(1) Frankenmuth Mutual Insurance Company—a homeowner's policy effective February 9, 1975, to February 9, 1977, and a Compak (commercial package) policy effective July 1, 1975, to July 14, 1976;

(2) Aetna Life & Casualty Company—a homeowner's policy effective February 10, 1977, to February 9, 1979, and a personal excess indemnity policy effective December 26, 1974, to December 26, 1978;

(3) West American Insurance Company—a special multi-peril policy (SMP) with a comprehensive general liability endorsement effective July 1, 1976, to July 1, 1979;

(4) Vigilant Insurance Company—a medical malpractice policy effective March 15, 1975, to May 1, 1975, and July 7, 1976, to May 1, 1980;

(5) Medical Protective Company—a medical malpractice policy effective July 15, 1971, to July 15, 1976;

(6) Ohio Casualty Insurance Company—umbrella coverage under a personal excess indemnity policy effective December 26, 1978, to December 26, 1981.

On December 9, 1980, Frankenmuth filed a complaint for declaratory relief, requesting a declaration of rights under the above policies. Ohio Casualty and West American filed a cross-complaint for declaratory relief.

On July 9, 1981, defendant Farm Bureau filed a motion for summary judgment, claiming that, based upon the effective termination date of its policy and the professional liability exclusion contained therein, it was not obligated to provide coverage to Kompus. On August 11, 1981, Vigilant filed a motion for summary judgment with respect to Farm Bureau, Frankenmuth, West American and Aetna, requesting a ruling that, as to those allegations of the complaint against Kompus not involving malpractice, the latter four named insurers had a duty to defend. On August 25, 1981, defendant Aetna filed a motion for summary judgment, contending that its homeowner and personal excess indemnity insurance provisions did not provide coverage for the incidents upon which the complaints were based.

Since the complaints against Kompus were all before the same circuit court judge, the Frankenmuth request for declaratory judgment was also assigned to that judge on August 25, 1981. On February 1, 1982, he issued his opinion on the motions for summary judgment and the complaint for declaratory judgment. Essentially, the court held that:

(1) Because insurance coverage under its homeowner policy was arguable, Frankenmuth had a duty to defend Kompus (with regard to incidents occurring during the effective dates of the policy)

on Counts I and III of Mallett's complaint, Counts I and II of Hoag's complaint, Counts I, II, III, V, VI and VII of Ennes's complaint, and Counts VII through XX of Winter's complaint.

(2) Under its Compak policy, Frankenmuth had a duty to defend regarding incidents occurring in Kompus's medical office during the effective dates of the policy as alleged in Winter's complaint.

(3) Farm Bureau had no duty to defend under its SMP policy.

(4) Under its general liability endorsement policy, Farm Bureau had a duty to defend against Counts I and II of Hoag's complaint.

(5) Aetna's "business pursuits" clause in both its homeowner's and personal excess liability policies excluded all incidents from coverage, and Aetna had no duty to defend.

(6) West American and Ohio Casualty had no duty to defend against the malpractice counts because of the "professional service" exclusions in their policies. Both insurers had a duty to defend against other counts.

(7) The malpractice insurers—Medical Protective, Vigilant and Employers Commercial Union— had a duty to defend against malpractice claims arising from acts which occurred within the effective dates of coverage.

(8) Public policy would not be advanced by excusing the insurers from the above duties.

Ohio Casualty, Vigilant, Frankenmuth, Commercial Union and Farm Bureau moved for rehearing. Several of the other parties also joined in the motions. On March 25, 1982, the trial judge reaffirmed and clarified his earlier ruling that Aetna had no duty to defend against the Kompus complaints by virtue of the "business pursuits" exclusion. Reconsidering his earlier ruling, however, the

trial judge ruled that, under a similar "business pursuits" clause, Frankenmuth had no duty to defend under its homeowner policy. It had a duty to defend only against the Winter complaint and only under its Compak policy.

On May 28, 1982, the trial judge entered an order granting Frankenmuth partial summary judgment on its complaint and denying Vigilant's and Medical Protective's motions for summary judgment against Frankenmuth. On June 11, 1982, an order denying Vigilant's motion for rehearing was entered.

On June 30, 1982, Aetna moved for accelerated and/or summary judgment against cross-plaintiff Vigilant. On August 10, 1982, the court granted the motion on the ground that Aetna owed no duty to defend against the Stroud complaint. By order of August 16, 1982, the court granted Vigilant's motion for summary judgment in part, directing the duties of defense (as set forth above) of the various carriers with regard to the respective Kompus complaints.

The following claims of appeal were filed:

(a) #65090—By Vigilant, from the orders of May 28, 1982, and June 11, 1982.

(b) #65269—By Mallett, Hoag and Ennes from the order of May 28, 1982.

(c) #66471—By Vigilant, from the order of August 10, 1982.

(d) #66509—By Frankenmuth, a cross-appeal, from the order of August 16, 1982.

(e) #69239—By Medical Protective on January 26, 1983, an application for delayed appeal from the order of May 28, 1982. This Court granted the delayed appeal on March 8, 1983.

(f) #66818—By West American, from the order of August 16, 1982.

On December 1, 1982, the trial judge issued his opinion on Farm Bureau's earlier motion for rehearing and granted Farm Bureau's motion for summary judgment. A stipulation to dismiss Farm Bureau's appeal (#66703, from the order of August 16, 1982) was then presented and an order dismissing that appeal was entered on February 17, 1983. The remaining above cases were consolidated on appeal by this Court's orders of October 14, 1982, and March 8, 1983.

On appeal, this Court must determine whether Frankenmuth, Aetna and West American owe a duty to defend their insured (Kompus) in the lawsuits filed by defendant patients. We conclude that they do not.

I

Appellants Vigilant, Hoag, Mallett, Ennes and Medical Protective argue that the trial court erred in finding that Frankenmuth and Aetna had no duty to defend under their homeowner policies issued to Kompus. The trial court held that coverage was excluded under the "business pursuits" exclusions contained in both policies.

In *State Mutual Cyclone Ins Co v Abbott,* 52 Mich App 103; 216 NW2d 606 (1974), this Court adopted the two-pronged test for business pursuits set forth in *Fadden v Cambridge Mutual Fire Ins Co,* 51 Misc 2d 858, 862; 274 NYS2d 235, 241 (1966):

" 'To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a

living, procuring subsistence or profit, commercial transactions or engagements.' " 52 Mich App 108.

This test has been applied to find that acts were not within the business pursuits of the insured where a business owner, while shoveling snow off the roof of his building, threw a broken shovel handle unintentionally onto power lines, causing damage to nearby property, *Michigan Mutual Liability Co v Ferguson,* 15 Mich App 298; 166 NW2d 525 (1968), *lv den* 381 Mich 813 (1969); where the insured set off a firecracker in his place of employment, injuring another, *Morrill v Gallagher,* 370 Mich 578; 122 NW2d 687 (1963); and where the insured razed a barn on his property and sold the wood to another who was injured while the two men were loading the wood onto a truck, *Randolph v Ackerson,* 108 Mich App 746; 310 NW2d 865 (1981), *lv den* 413 Mich 896 (1982). In the first of these two cases, the incidents were not considered business pursuits because they were not even arguably committed out of a profit motive; in the latter case, while the activity was profit motivated, it was not continuous.

The business pursuit test was met, however, in *Abbott, supra,* where a blacksmith injured a horse while shoeing it, and in *Kermans v Pendleton,* 62 Mich App 576; 233 NW2d 658 (1975), where a bar owner shot a customer. In *Riverside Ins Co v Kolonich,* 122 Mich App 51; 329 NW2d 528 (1982), this Court acknowledged the viability of the two-pronged test but held that a question of fact was raised as to whether the ceramics business on the insured's property, where the injured party slipped and fell, was a hobby or a profit-making activity.

To the extent the individual patients' complaints in the instant case allege malpractice or concern acts undertaken by Kompus under the auspices of

rendering his usual professional services, they fall within the business pursuits exclusion.[1] Engaging in sexual acts with a patient supports a malpractice claim by the patient. See *Cotton v Kambly,* 101 Mich App 537, 541-542; 300 NW2d 627 (1980), *lv den* 411 Mich 1033 (1981). Overprescription of drugs may also support such a claim. A subsequent insurance claim based on such acts by a physician arises out of the "rendering of or failure to render professional services". *Vigilant Ins Co v Kambly,* 114 Mich App 683, 686; 319 NW2d 382 (1982). Where the professional services are continuous and a profit motive is involved, the claim also arises out of the business pursuits of the insured.

We believe that, under the two-pronged test for business pursuits, the acts complained of in the individual patients' complaints did arise out of business pursuits of Kompus. The trial court found in its opinion of February 1, 1982, that "[w]ithout exception, the acts complained of occurred during a doctor/patient relationship". While the complaints contained counts of ordinary negligence and intentional torts as well as malpractice, we do not find this distinction to be necessarily controlling since it is the acts themselves we must look to rather than the alternative labels applied to them by the injured parties. Here, Kompus's relationship with each of the individual patients clearly began as one of doctor/patient. According to the complaints, Kompus continued to represent to his patients that his actions were part of their therapy and treatment and for their benefit, or that the

---

[1] We note also the applicability of the "professional services" exclusion contained in the Frankenmuth and Aetna policies, which excluded coverage for "bodily injury or property damage arising out of the rendering of or failing to render professional services." The trial court, in its initial opinion of February 8, 1982, found this exclusion applicable only to those malpractice claims labeled as such.

doctor/patient relationship was a continuing one. Kompus was able to commit the complained-of acts apparently only because of the trust reposed in him as doctor by his patients. While Kompus apparently did not charge Mallett for "therapy" during the time period within which some of the acts occurred, payments for treatment were merely postponed until Mallett became re-employed and the matter of payments was then to be resolved "in other ways". No references to payment are made in Hoag's or Ennes's complaints. However, it is clear that the relationships began as ones involving profit, with the parties expecting Kompus to be paid for his services. We are unwilling to say that the profit requirement of the business pursuits test may be satisfied only if the individual complained-of acts were themselves specifically performed for profit on an act-by-act basis. The test is not so narrow. We interpret it instead to require that the acts be performed as part of the business or service normally performed by the insured for profit, *i.e.,* the business pursuit of the insured; in the instant case, psychiatric treatment or therapy.

While agreeing with the trial court that the business pursuits exclusion could be applied to preclude coverage of virtually all of the counts raised by the individual patients, we are not necessarily convinced that Count VIII of the Ennes complaint, which alleged defamation, falls within the business pursuits exclusion. We do find, however, and it is so alleged in the complaint, that the defamatory statements were made intentionally by Kompus, and were intended to attribute a lack of credibility to Ennes, and are therefore not accidents. Consequently, they are not occurrences as required for coverage under the policy, and Frank-

enmuth and Aetna have no duty to defend since coverage is not available.

Likewise, while it was generally an appropriate exclusion, even before considering the business pursuits exclusion, coverage should initially have been denied Kompus under the basic terms of the Frankenmuth and Aetna homeowner policies. Those policies provide generally, and in identical terms, as follows:

"This company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence."

The word "occurrence" is defined in both policies as "an accident". The term "accident" is not defined in the policies, but has been defined by the Michigan Supreme Court:

" 'An "accident", within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.' " *Guerdon Industries, Inc v Fidelity & Casualty Co of New York,* 371 Mich 12, 18-19; 123 NW2d 143 (1963), quoting 10 Couch on Insurance (2d ed), § 41:6, p 27.

The issue of "accident" was considered by the trial court, although apparently in relation to a notice requirement contained in the policies rather

than whether the coverage was available initially. The trial court could not say "whether Mallett's injuries were 'accidental' vel non". The trial court also discussed the intent behind Kompus's acts insofar as it related to the "expected or intended" acts exclusion, an exclusion which used language similar but with opposite meaning to that used by the Supreme Court in *Guerdon.* In order for an intentional acts exclusion to apply, the trial court ruled, there had to be both an intentional act and an intent to injure. See *Morrill, supra,* p 588; *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686, 692; 218 NW2d 52 (1974). The court found that, since no allegations of intent to injure were contained in any pleadings, the fact that the acts committed by Kompus were intentional (which they were) was insufficient to trigger the exclusion.[2]

We hold that, finding Kompus's actions to have been intentional, the trial court, in ruling on Frankenmuth's complaint for declaratory judgment and Aetna's motion for summary judgment, should have found coverage precluded under the basic "occurrence" requirement of the policy. Regardless of the label affixed to each claim raised by the individual patients, it is clear that the acts performed by Kompus upon which those claims were based were intentional and the injuries at

---

[2] An intent to injure is required only where demanded by insurance policy language, however. *Morrill v Gallagher,* 370 Mich 578; 122 NW2d 687 (1963); *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686; 218 NW2d 52 (1974). In the instant case, while injurious intent was required to deny coverage under the "expected or intended" acts exclusion, the trial court did not need to reach or consider the applicability of that exclusion. Threshold coverage under the policies at issue was available only for "accidents" or "occurrences". It was sufficient, therefore, to show only that the acts themselves were intentional in order to remove the incidents from coverage as "accidents"; whether the insured also had an intent to injure was irrelevant.

least foreseeable. The acts and injuries alleged by the complaining patients did not occur "without the insured's foresight or expectation and without design or intentional causation on his part". *Guerdon, supra,* p 18.

We therefore arrive at the same result as that reached by the trial court, although our finding that Frankenmuth and Aetna have no duty to defend on the Hoag, Mallett, and Ennes complaints is based on the basic policy language granting coverage for accidents only, while the trial court relied on the business pursuit exclusion. The summary judgments entered in favor of Frankenmuth and Aetna on May 28, 1982, and June 11, 1982, are therefore affirmed.

## II

In a similar vein, appellant West American argues that the trial court incorrectly ruled that it had a duty under its special multi-peril policy (SMP) to defend all counts except those specifically alleging malpractice. West American had argued below that coverage was precluded both under its "occurrence" requirement and its "professional service" exclusion. Those portions of the policy provide:

" 'Occurrence' means an accident involving continuous or repeated exposure to conditions, which result in bodily injury or property damage, neither expected nor intended from the standpoint of the insured.

\* \* \*

"Professional Liability Exclusion Endorsement— Form C.

" 'It is agreed that with respect to any operation described above or designated in the policy, the subject of this endorsement, the insurance does not apply to

bodily injury or property damage due to the rendering of or failure to render any professional services.' "

Originally, West American filed a cross-complaint for declaratory relief. Aetna filed a motion for summary judgment on the cross-complaint. In its opinion of February 1, 1982, the court held:

"Given the above definitions of occurrence and accident, the court is unable to say that no factual development could possibly *[sic]* individual defendant rights to recover under the policies. Accordingly, the court finds that neither West American nor Ohio Casualty has a duty to defend against any malpractice counts delineated above in Part I under their respective 'professional service' exclusions. The court also finds that both insurers do have a duty to defend against those incidents which allegedly occurred during the effective coverage dates in the following counts: Mallet complaint, Counts I and II; Hoag complaint, Counts I and II; Ennes complaint, Counts I-III and V-VII; Winter complaint, Counts VII-XX. Since the Winter complaint alleges homosexual activities at the psychiatrist's office, West American also has a duty to defend under its SMP policy."

As in the case of Frankenmuth and Aetna, the appropriate vehicle for finding no duty to defend by West American was the intentional nature of Kompus's acts. It cannot be argued that Kompus, a psychiatrist who knew the nature and extent of his patients' psycho-sexual problems, did not expect the injuries suffered by the individual defendants in this action. Since the acts were not occurrences within the meaning of West American's policy, coverage was precluded even as to the claims not labeled malpractice since the acts themselves were intentional and the injuries expected from the standpoint of the insured.

This result is further supported by *Armstrong v*

*Security Ins Group,* 292 Ala 27; 288 So 2d 134 (1973), where the Supreme Court of Alabama determined the effect of an "intentional injury" exclusion clause. The insured owned a sandwich shop. A fight broke out in the shop. Armstrong was involved in the fight. The insured intervened and pulled a gun, pointing it at Armstrong. The gun fired and injured Armstrong. A pertinent section of the policy provided that the insurer would pay damages caused by an "occurrence". "Occurrence" was defined similarly to the West American definition. The trial court held that the shooting was not an accident. The Alabama Supreme Court noted that Alabama recognizes that an accident occurs when the act is voluntary if the results are unanticipated or unexpected. However, it also recognized that where acts are intentional and the injury is the natural result of the act, the result is not caused by accident even though it was unforeseen and unintended.

Since Kompus's acts were clearly intentional and the resulting injuries, especially given these particular victims, were natural results, West American had no duty to defend Kompus against any of the complaints because none involved "occurrences".

Again, however, the trial court could also have relied upon the professional services exclusion contained in the policy, since all of the acts (except arguably the defamation claim made by Winter) arose out of the original doctor/patient relationship which existed between Kompus and the patients. The trial court, therefore, erred in ruling that West American had a duty to defend on Counts I and II of the Mallett complaint, Counts I and II of the Hoag complaint, Counts I through III and V through VII of the Ennes complaint, and Counts VII through XX of the Winter complaint.

## III

Finally, Frankenmuth appeals the order of summary judgment entered on August 16, 1982, affirming the trial court's ruling that Frankenmuth had a duty to defend under its Compak policy against the Winter complaint as to those acts which occurred at Kompus's office. Frankenmuth's policy provided:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured and conducted at or from the insured premises and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

\* \* \*

"Professional Liability Exclusion Form C.

"It is agreed that with respect to any operation described above or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury or property damage due to the rendering of or failure to render any professional service."

The "professional service" exclusion makes it clear that the policy is not designed to cover malpractice claims. To the extent that the acts involving Winter and Kompus at Kompus's office

constituted malpractice, therefore, coverage is excluded under that provision. The acts complained of clearly arose out of and during the doctor/patient relationship.

Preceding the application of the "professional service" exclusion, however, is the determination that, pursuant to the previously quoted definition of accident, Frankenmuth had no duty to defend because the acts involved were not "occurrences". The acts perpetrated by Kompus against and with Winter were intentional acts and the resulting injuries cannot be called unexpected as far as Kompus is concerned.

Coverage under the SMP policy provided Kompus by Frankenmuth was therefore not available as to those acts alleged in the Winter complaint which took place in Kompus's office.

## Conclusion

The trial court's orders are affirmed in part, reversed in part. The orders of May 28, 1982, and June 11, 1982, insofar as they hold that Aetna, Frankenmuth and West American have no duty to defend against certain counts, are affirmed. To the extent that the orders, as well as the order of August 16, 1982, require Frankenmuth, Aetna and West American to defend certain counts raised by the individual patients, they are reversed.

Affirmed in part, reversed in part, and remanded for entry of appropriate orders. Costs to prevailing parties.