767 P.2d 824

James H. BLACK and Elaine Fenwick,
Plaintiffs–Respondents,

v.

FIREMAN'S FUND AMERICAN
INSURANCE COMPANY,
Defendant–Appellant,

James M. BLACK,
Plaintiff–Respondent,

v.

Elaine FENWICK, Defendant,

and

Fireman's Fund American Insurance
Company,
Defendant–In–Intervention–Appellant.

Nos. 16879, 16908.

Court of Appeals of Idaho.

Jan. 10, 1989.

Rehearing Denied Dec. 12,1988.

John P. Howard, argued, and Robert W.
Talboy, Quane, Smith, Howard & Hull,
Boise, for defendant-appellant.

Harry C. De Haan, Twin Falls, for plaintiffs-respondents.

SUBSTITUTE OPINION

The Court's prior opinion, dated November 4, 1988, is hereby withdrawn.

**450**

WALTERS, Chief Judge.

This is a consolidated appeal in two related cases arising from an alleged personal injury occurring at an auction. The dispute presents two principal issues: first, whether the "business pursuit" exclusion to a homeowner's liability insurance policy relieved an insurer of its duty, under the facts of this case, to provide coverage to the insured; and second, whether the insurer had the duty to defend its insured even though coverage for the accident was questionable. We hold that the "business pursuit" exclusion eliminated the insurer's obligation to provide coverage for the injured third-party, but that the insurer still had a duty to defend its insured. We therefore reverse the judgment for the injured third-party, and we affirm the order granting the insured a trial on the question of damages for the insurer's breach of a duty to defend.

## I. *Facts*

The facts of this case are simple, but the procedure is somewhat convoluted. Elaine Fenwick (Fenwick) is the widow of Donald Fenwick, who operated Fenwick Electric in Twin Falls for approximately thirty years until his death in 1983. After their marriage in 1980, the Fenwicks incorporated Fenwick Electric; Donald served as president and Elaine as vice president. The business was located across an alley from the Fenwicks' residence. After Donald's death, Elaine became president and continued to operate the business for one and one-half years, but ultimately decided to close the business for financial reasons. In November of 1984, Fenwick decided to forfeit the charter of the corporation. I.C. § 30–1–134. The remaining employees of Fenwick Electric were terminated, unemployment records and tax returns were filed, the business' liability insurance policy was cancelled, and all suppliers were informed that Fenwick Electric was no longer in business. The dissolution process was undertaken without supervision by a court, I.C. §§ 30–1–87(c), –97. Elaine contacted Wall Auctioneers to conduct an auction for the purpose of liquidating the corporate assets of Fenwick Electric and some of Donald's personal effects. The auction was scheduled for November 15, 1984.

James Black attended the auction. As Black was proceeding to the auction site, he slipped on snow or ice near the Fenwick residence, fell, and broke his ankle. It is unclear whether the accident occurred on the residential portion of Fenwick's property, in the alley, or across the alley on the business side of Fenwick's property. Black sued Wall Auctioneers, the City of Twin Falls and Fenwick, alleging that he had been a business invitee to the auction, and that the defendants were liable for negligently maintaining the property in a dangerous condition.[1] For simplicity, that action will be designated hereinafter as "Case I."

Immediately after the accident, Fenwick contacted her insurance agent, who in turn contacted Fireman's Fund American Insurance Company (Fireman's Fund), the insurer under Fenwick's homeowner's policy. Fireman's Fund conducted an investigation of the accident site. Subsequent to that investigation, Fireman's Fund denied liability insurance coverage to Fenwick. Fenwick then obtained counsel at her own expense, and moved for summary judgment against Black. The motion was denied by the trial court. Thereafter, Black and Fenwick entered into a stipulation in which Fenwick conceded liability and, in exchange, Black agreed not to execute on his judgment against Fenwick. Additionally, Fenwick stipulated to representation by Black's attorney in future proceedings arising from the accident. Black obtained judgment against Fenwick on the question of liability and, at a hearing, proved damages in the amount of $281,104.37.

Shortly after obtaining that judgment, Black and Fenwick sued Fireman's Fund

---

1. Wall Auctioneers eventually settled with *Black*, and is no longer a party to this action. The City of Twin Falls was found to have no liability for the accident and was also dismissed from the suit. Consequently, the caption of this case has been amended on appeal to delete the names of all parties who no longer are involved in the action.

and Fenwick's insurance agent[2] to enforce the judgment entered against Fenwick in Case I, for attorney fees for both Black and Fenwick in Case I, and for damages arising from Fireman's Fund's tort of bad faith in failing to defend Fenwick against Black. That case will be referred to hereinafter as "Case II."[3] Pursuant to discovery requests, Fireman's Fund deposed Black and Fenwick. Black's deposition revealed that he had been employed primarily as a card dealer in Nevada for the two years prior to his accident, contrary to his testimony during the damages hearing in Case I, where he stated that he had been a construction worker (earning considerably more money than he would have made as a card dealer). Fenwick's deposition revealed that she felt no personal liability for Black's accident, suggesting that she had stipulated to liability only to escape personal financial loss. Subsequently, Fireman's Fund moved to intervene and to set aside the judgment in Case I, and to consolidate the proceedings in Case I and Case II. In that motion, Fireman's Fund contended that Black's misrepresentation of his vocation as a construction worker, and Black's and Fenwick's collusion in obtaining the judgment, warranted intervention. The motion to consolidate was denied by the trial court in Case II, but the motion to intervene and to set aside the judgment in Case I was left to the decision of the trial judge in that case.

On cross-motions for summary judgment, the trial court in Case II held that Black and Fenwick were entitled to judgment against Fireman's Fund for the amount of the judgment in Case I (contingent upon the trial court's ruling in Case I regarding the motion to intervene or to set aside judgment); that Fenwick was entitled to attorney fees in Case I and Case II; that Black was not entitled to attorney fees; and that Fenwick was entitled to damages as a result of Fireman's Fund's tort of bad faith in failing to defend Fenwick in Case I. In the meantime, the trial judge in Case I denied Fireman's Fund's motion to intervene and to set aside judgment, stating that Fireman's Fund had failed to show any "unusual and compelling circumstances" warranting intervention. The court also dismissed Fireman's Fund's motion to set aside judgment and to consolidate both cases. Fireman's Fund obtained certification under I.R.C.P. 54(b) regarding the issues determined in the order and judgment in Case II and, along with the final order on the motion to intervene in Case I, appealed to this Court. We granted a motion to consolidate both cases on appeal.

## II. *Business Pursuit Exclusion*

Fireman's Fund argues that the injury suffered by Black is not covered under Fenwick's policy because it occurred in connection with the auction, an activity removed from coverage under the policy's "business pursuit" exclusion.[4] Fireman's Fund contends that the language of Fenwick's policy specifically excludes business activities; because Fenwick's auction was part of her corporate duty to "wind-up" the affairs of Fenwick Electric, Fireman's Fund is not liable for injuries sustained in the course of the auction. In addition, Fireman's Fund submits that Fenwick is not eligible for coverage regardless of

---

2. The insurance agent was eventually dismissed from this action and the caption on appeal was amended accordingly. *See* n. 1, *supra*.

3. The trial judge in Case I voluntarily disqualified himself from the proceedings in Case II, pursuant to I.R.C.P. 40(d)(4). Thus, throughout the balance of this proceeding, our review is directed to the rulings made by different trial judges in Case I and Case II.

4. The pertinent parts of the insurance policy (with emphasis given to words appearing in bold type in the policy) are as follows:
   DEFINITIONS
   \*   \*   \*   \*   \*   \*

2. *"business"* includes trade, profession or occupation.
   \*   \*   \*   \*   \*   \*

SECTION II—EXCLUSIONS
   *1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others* do not apply to *bodily injury* or *property damage:*
   \*   \*   \*   \*   \*   \*
   b. arising out of *business* pursuits of any *insured....*
   This exclusion does not apply to:
   (1) activities which are ordinarily incident to non-*business* pursuits; ....

whether or not operation of the electrical business was her primary occupation. Black and Fenwick offer several arguments in rebuttal. First, they submit that the business pursuit exclusion should not apply because Fenwick Electric had ceased to exist prior to the auction. Second, they maintain that the auction was not a business pursuit because it was conducted for the sole purpose of raising funds to pay off the remaining debts of the corporation. Third, they assert that the exclusion applies only to regularly conducted business activities, not to part-time business endeavors. Finally, they contend that it was Wall Auctioneers who conducted the auction—not Fenwick, who was merely a passive observer.

On appeal from a summary judgment, our standard of review is well settled. We first determine whether a genuine issue of material fact exists; in making this determination, we construe all facts and reasonable inferences in favor of the party opposing the motion; upon the facts thus viewed, we then determine whether either party is entitled to judgment as a matter of law. *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984); I.R.C.P. 56(c). In this case, the facts regarding application of the business pursuit exclusion are largely undisputed—the only questionable fact pertains to the location of Black's accident. That fact is not material to the issue of whether Fenwick's auction fell within the "business pursuit" exclusion. Where no material issue of fact exists, we exercise free review. *See Standards of Appellate Review in State and Federal Courts*, § 3.2, IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc., 1985).

Prefatorily, Black and Fenwick suggest that the "business pursuit" exclusion in the policy here is ambiguous. The district court indicated the exclusion was not ambiguous. Construing the language of the policy according to its plain and ordinary meaning, we believe the intent and purpose of the exclusion are clear. *See McDougall v. Hartford Fire Ins. Co.*, 94 Idaho 220, 485 P.2d 962 (1971). We hold that the exclusion is not ambiguous. Moreover, even if the language were ambiguous, it would not mean that coverage automatically existed. Rather, the question would be whether any reasonable interpretation of the "business pursuit" exclusion would fail to encompass the auction conducted in this case. In our view, the auction would be excluded under any reasonable interpretation of the insurance policy's provisions.

The "business pursuit" exclusion is a standard feature in many homeowner's insurance policies. *See* e.g., *McDougall v. Hartford Fire Ins. Co., supra.* The application of this exclusion has become the subject of widespread litigation. The purpose of the exclusion is simple; it is intended to limit liability coverage for activities which otherwise would require specialized underwriting and rating, thus keeping homeowner's insurance rates at reasonable levels. Annot., *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy* 48 A.L.R.3d 1096, 1098–99 (1973).

■ Most courts take a restrictive view of what constitutes a "business pursuit," similar to the following statement:

[t]o constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.

*Fadden v. Cambridge Mut. Fire Ins. Co.*, 51 Misc.2d 858, 274 N.Y.S.2d 235, 241 (1966), *affirmed* 27 A.D.2d 487, 280 N.Y.S. 2d 209 (1967). This definition of "business pursuit"—continuous or regular activity conducted for the purpose of making a profit or living—has been adopted in a number of jurisdictions. *Industrial Indemnity Co. v. Goettl*, 138 Ariz. 315, 674 P.2d 869 (App.1983); *State Farm Fire and Casualty Co. v. Friend*, 478 So.2d 1198 (Fla.App.1985), *review denied* 488 So.2d 831 (Fla.1986); *State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 58

Ill.Dec. 609, 430 N.E.2d 641 (1981); *Krings v. Safeco Ins. Co. of America*, 6 Kan. App.2d 391, 628 P.2d 1071 (1981); *Frankenmuth Mut. Ins. Co. v. Kompus*, 135 Mich.App. 667, 354 N.W.2d 303 (1984); *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 529 A.2d 394 (1987); *Camden Fire Ins. Assoc. v. Johnson*, 294 S.E.2d 116 (W.Va.1982); *see* 48 A.L.R.3d 1096, *supra.* Consistent with the rule followed in the majority of jurisdictions, we believe that in determining whether an activity is a "business pursuit," the following factors must be considered: whether the activity is customary to a business pursuit and whether the objective and purpose of the activity are commercial in nature, are in furtherance of the business, or are a means of livelihood.

■ Here, the policy provides that personal liability coverage and medical payments to others will not be extended to bodily injury or property damage arising out of the business pursuits of the insured. The parties' interpretation of whether Fenwick's involvement in the auction constitutes a business pursuit is in dispute. However, a disagreement between litigants does not automatically create an ambiguity; neither is the policy language ambiguous simply because a dispute exists over the application of the language to a certain fact pattern. Deciding whether the exclusion applies must necessarily be determined on a case-by-case basis. *See Camden Fire Ins. Assoc. v. Johnson, supra.* Applying the two-pronged test of *Fadden*, we agree with Fireman's Fund that the auction was a business pursuit. We state the following reasons for our decision.

First, there was continuity between Fenwick's operation of Fenwick Electric and the winding-up of the corporate affairs during liquidation. Although Black and Fenwick suggest that Fenwick was a school teacher by profession, and only ran the corporation for a few months after her husband's death—nonetheless, at the time of the forfeiture of the corporate charter, Fenwick was the president of Fenwick Electric and was its major stockholder. In this capacity, she became a trustee of the corporation and was thus responsible for settling the affairs of the corporation. *See* I.C. § 30–1–136. As part of this process, she was responsible for winding-up those affairs, by liquidating corporate assets, paying creditors, and distributing the balance of any assets to the shareholders. *Id.; Smith v. Great Basin Grain Co.*, 98 Idaho 266, 561 P.2d 1299 (1977). Part of this process included selling the remaining assets of Fenwick Electric in order to pay off its creditors, precisely the purpose for the auction. Although Black and Fenwick argue that the act of selling the corporate assets was a one-time endeavor—separate and distinct from the act of continuously running the business—we are unpersuaded. Fenwick's winding-up of the corporate affairs was undertaken on *behalf* of the corporation. The auction was an expedient way to settle Fenwick Electric's accounts with its creditors, assure adequate distribution to the shareholder's of the remaining business assets, and accomplish termination of the corporation. Although the auction was not part of the day-to-day business of the corporation, it served as one of the "final steps" in the process of winding-up the corporation's affairs. It was thus a continual part of Fenwick Electric's operation.

Second, the auction was conducted for the purpose of "making a profit or living." Although the record is not clear whether Fenwick actually received a profit from the sale of Fenwick Electric's assets, the term "profit or living," as used in the business pursuit sense, does not necessarily mean that the activity being evaluated must produce revenues exceeding expenses. Nor does it mean, as Fenwick suggests, that the proprietor of the business must look to the activity in question as a means of providing a living. What must be evaluated is whether the activity being scrutinized is related in any way to the insured's business pursuit or commercial activity. *See Martinelli v. Security Ins. Co. of New Haven*, 490 S.W.2d 427 (Mo.App.1972); *see* 48 A.L.R.3d at 1105. The focus of this analysis is not on the activity itself, but on the purpose for which the activity was conducted. For instance, in *Camden Fire Ins. Assoc. v. Johnson, supra*, the Supreme

Court of West Virginia held that the insured's baby-sitting activity was not a business pursuit, because although the insured was compensated for her services, her primary purpose for baby-sitting was to aid her own daughter by providing child care while the daughter was working. Likewise, in *Southern Guaranty Ins. Co. v. Duncan*, 131 Ga.App. 761, 206 S.E.2d 672 (1974), the Court of Appeals of Georgia held that an automobile mechanic's spare-time racing of stock cars did not constitute a business pursuit. Inherent in these cases, and others like them, is the notion that the activity in question must be primarily commercial in nature. Thus, even though Fenwick's auction was not an activity which was intended to produce on-going income for the corporation, it was integral to the business interests or commercial activity of Fenwick Electric. Therefore, it is immaterial whether Fenwick actually produced a profit at the auction, because in the general sense, the auction was part of Fenwick Electric's business activity.[5]

Nor are we persuaded by Black's and Fenwick's contention that because Fenwick was a school teacher by profession, her part-time status as president of Fenwick Electric insulates her from the business pursuit exclusion. *See Southern Guaranty Ins. Co. v. Duncan, supra; Brickell v. United States Fire Ins. Co.*, 436 So.2d 797 (Miss.1983). In both *Duncan* and *Brickell*, the insured parties had undertaken commercial activities which were not part of their regular course of business.[6] When faced with individual liability, neither parties' activities were construed as contained in the business pursuit exclusion. However, both *Duncan* and *Brickell*, as well as similar cases, are distinguishable. These cases suggest that part-time business activities which are not intended primarily for the purpose of producing income or profit do not fall within the business pursuit exclusion. Fenwick's case, however, is one where there seems to be no other purpose for running the business except to make a profit.[7] Thus, although Fenwick was not an electrician by profession, she did operate the electrical business for profitable purposes. Further, we are mindful that if we reach the opposite conclusion—that no part-time business activity can be a business pursuit—a great number of individuals with interests in part-time businesses located in their homes would be able to circumvent commercial insurance policies simply by being primarily employed in another business or profession. We believe that legitimizing such an approach would frustrate the primary purpose for providing a business pursuit exclusion to homeowner's insurance policies.

Finally, we cannot agree that because Wall Auctioneers conducted the auction, Fenwick was not involved in a business pursuit. Wall Auctioneers simply acted as the agent of Fenwick Electric; as its trustee, Elaine Fenwick was ultimately responsible for selling the remaining assets of the corporation.

We therefore hold, as a matter of law, that the auction of Fenwick Electric's assets conducted during the course of winding-up the corporation's affairs was a continuous and regular activity conducted for the purpose of making a profit and was thus within the scope of the business pursuit exclusion to Fenwick's policy. Consequently, we reverse the trial court's summary judgment in Case II which held that Fireman's Fund was financially responsible for Black's damages.

---

5. We recognize that a number of jurisdictions have held that an act which is inherently non-business in nature—even if conducted in a business setting—does not except coverage under the business pursuit exclusion. *See* 48 A.L.R.3d at 1108, § 6, *supra; see e.g., Crane v. State Farm Fire & Casualty Co.*, 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971). Those cases are not apposite here.

6. Duncan was sued by a third party who sustained injury while Duncan was repairing his stock car. Brickell, an insurance agent, was sued while serving as trustee of an automobile dealership during liquidation.

7. In her deposition, Fenwick does suggest that the business was kept open for a time out of loyalty to her employees. However, when the corporation ceased being profitable, Fenwick decided to liquidate the business.

### III. *Duty To Defend*

We turn next to the ruling of the trial court in Case II granting summary judgment to Black and Fenwick on the issue of Fireman's Fund's duty to defend Fenwick in Case I. Fireman's Fund argues that it had no duty to defend Fenwick because Black's complaint in Case I did not state a claim that gave rise to insurance coverage. Black's amended complaint alleges that "[t]he defendants, jointly and severally, failed to utilize ordinary care in the maintenance of the premises, thus exposing *business* visitors to unreasonable dangers." (Emphasis added.) Specifically, Fireman's Fund contends that the trial court in Case II erred in granting partial summary judgment to Black because he was attending the auction as a business invitee, an activity not covered under Fenwick's homeowner's insurance policy. Fireman's Fund also submits that the location of Black's accident—either in the alley or on the Fenwick Electric business property—was not an insured location according to that policy. In contrast, Black and Fenwick argue that Fenwick's insurance policy provides for defense even on frivolous or meritless claims; and because there was uncertainty over the location of the accident, Fireman's Fund was obligated to defend Fenwick.

■ Our standard of review of this issue is identical to that in our previous discussion on the business pursuit exclusion. *See Hirst v. St. Paul Fire & Marine Ins. Co., supra.* We note first that the presence of a genuine dispute over whether the accident occurred on or off of the insured premises is no bar to the entry of summary judgment against Fireman's Fund as to its duty to defend. Indeed, the duty to defend clearly exists so long as there is a genuine dispute over facts bearing on coverage under the policy or over the application of the policy's language to the facts. Accordingly, we hold that, as to Fireman's Fund's duty to defend, there is no genuine issue of material fact barring summary judgment. The following discussion also explains why the "business pursuit" policy exclusion did not excuse Fireman's Fund's duty to defend.

We have recognized that an insurer has a duty to defend its insured where the facts alleged in the complaint, if true, would bring the case within the insurance policy's coverage. *Hirst v. St. Paul Fire & Marine Ins. Co., supra.* See *Pendlebury v. Western Casualty and Surety Co.*, 89 Idaho 456, 406 P.2d 129 (1965). The basis for this rule is simple. To allow the insurer to avoid providing defense on questionable claims would frustrate one of the insured's basic purposes in procuring insurance coverage—protection from the expenses of litigation. *See Hirst v. St. Paul Fire & Marine Ins. Co., supra,* quoting *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir.1980). This duty is separate, unrelated, and much broader than the insurer's duty to pay damages. *Hirst v. St. Paul Fire & Marine Ins. Co., supra.* However, the insurer's duty to defend is not absolute. This Court has recognized that an injured third-party's claims against an insured must provide some link to the insurance agreement. *Id.; see also Standlee v. St. Paul Fire & Marine Ins. Co.*, 107 Idaho 899, 693 P.2d 1101 (Ct.App.1984). Our Supreme Court recently adopted a broad statement with regard to when an insurer must provide coverage. In *County of Kootenai v. Western Casualty and Surety Co.*, 113 Idaho 908, 750 P.2d 87 (1988), the Court said:

> [t]he duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy. [Emphasis original.]

*Id.* at 910, 750 P.2d at 89, *quoting State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D.Id.1986); *see also Hirst v. St. Paul Fire & Marine Ins. Co., supra; Standlee v. St. Paul Fire & Marine Ins. Co., supra; Maxson v. Farmers Ins. of Idaho, Inc.*, 107 Idaho 1043, 695 P.2d 428 (Ct.App.1985).

These cases typify the progressive attitude of the Idaho Courts regarding claims for breach of the duty to defend. For instance, in *Hirst*, we addressed the scope of the insurer's duty, stating that a court must look at the "full breadth" of the plaintiff's claim in order to determine if the

duty exists. This standard was substantiated in *Western Casualty*, where the Idaho Supreme Court reasoned that if a plaintiff's claim is *foreseeable* within the context of insurance coverage then the duty to defend arises; any doubt as to the obligation of the insurer should be resolved in favor of the insured. Although in *Hirst* we stated that a plaintiff's damages arising out of the duty to defend were governed by ordinary principles of contract law, the Idaho Supreme Court has since expanded the scope of recovery for breach of an insurance-contract duty, allowing a plaintiff who also proves the tort of bad faith to recover all damages proximately caused by the defendant's wrongful conduct. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986). *White* dealt with the tort of bad faith arising from an insurer's failure to provide first-party coverage to its insured on a fire insurance claim involving suspected arson. The Court held that a tort action was available in any situation where an insurer intentionally and unreasonably fails to discharge its contractual obligations to the insured.

Furthermore, while an insurer may always seek a declaratory judgment to determine if it must respond with coverage, *see Standlee v. St. Paul Fire & Marine Ins. Co., supra,* our Supreme Court has determined that an insurer cannot use a declaratory judgment proceeding as a shield to deny coverage:

> It is a misconception of the duty to defend, however, if the insurer refuses to defend and seeks a determination of the duty while the underlying case progresses against the insured, and then if found obligated under its duty, the insurer merely steps in and defends and pays defense fees that have accumulated. The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit. At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for non-coverage, it may seek declaratory relief. However, this does not abrogate the necessity of defending the

lawsuit until a determination of non-coverage is made. The insurer should not be allowed to "guess wrong" as to the potential for coverage.

*County of Kootenai v. Western Casualty and Surety Co.,* 113 Idaho at 911, 750 P.2d at 90.

Factually, Black's and Fenwick's posture in this case is very similar to the plaintiff and the insured party in *Hirst.* In that case, the insurer failed to defend its insured on a personal injury claim. In return for a covenant not to execute, the insured party assigned his cause of action for breach of the duty to defend to the injured plaintiff. We held that the insurer had breached its duty to defend, based primarily upon the wording of the plaintiff's complaint, and the language in the insured party's insurance policy. In fact, we noted that the insurer was liable even though the plaintiff's allegations contained in the complaint were later disproved.

■ In the present case, we see no reason to reverse the trial court's summary judgment. The plain wording of the policy provisions suggest that Fireman's Fund was to provide coverage for "bodily injury" occurring on Fenwick's "resident premises," but not on any property used for "business purposes." We note that Black's complaint does not specify the exact location of the accident, and there is discrepancy in the testimony as to whether the accident occurred on Fenwick's premises or on the Fenwick Electric business property. At the onset of litigation it was at least *foreseeable* that, if an accident occurred under circumstances exemplified by this case, a dispute would exist as to which property was the actual site of the injury. Thus, regardless of where the fact-finder ultimately determines the accident took place, Fireman's Fund should have defended Fenwick, at least until the question was resolved—e.g., by a declaratory judgment. It is important to point out that the duty owed by Fireman's Fund is based not on probability, but on the *potential* for a valid claim. *See County of Kootenai v. Western Casualty & Surety Co., supra.* In addition, it is not dispositive that the auction of Fenwick Electric's property could be construed as a business pursuit, thus pro-

hibiting coverage. Where a claim presents a fact pattern arguably within the policy, and the application of an exclusion presents a fairly debatable question of law or fact, we hold that the insurer has a duty to defend its insured until that question is resolved.

We therefore hold that Fireman's Fund had a duty to defend Fenwick from Black's claim. As a result, this case is remanded to the district court for a trial on the question of damages, including attorney fees incurred by Fenwick in Case I and Case II. Because Fenwick has asserted a claim for the tort of bad faith in Case II, she may recover all damages proximately caused by Fireman's Fund's breach of that duty to defend, if, at trial, Fenwick can establish that Fireman's Fund intentionally and unreasonably denied her legal representation in defense of Black's claims in Case I, and that she was harmed in a way not fully compensable at contract. *White v. Unigard Mut. Ins. Co., supra.*

### IV. *Conclusion*

Because we have decided that Fireman's Fund is not liable for injuries sustained by Black during the auction, we see no reason to decide whether Fireman's Fund should have been permitted to intervene in Case I. Furthermore, we need not discuss other issues raised by Fireman's Fund. The trial court's judgment and order in Case II for personal injury liability against Fireman's Fund is reversed. The trial court's judgment and order in Case II is affirmed as to the propriety of an award of damages, attorney fees, and costs to Fenwick, and the case is remanded for further proceedings. No costs or fees are awarded with respect to respondent Black and appellant Fireman's Fund. However, costs are awarded to respondent Fenwick, together with attorney fees for this appeal to be determined by the trial court on remand.

BURNETT and SWANSTROM, JJ., concur.