**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee,**

v.

**DOLOSICH et al., Appellants.**

[Cite as *State Auto. Mut. Ins. Co. v. Dolosich* (1999), 135 Ohio App.3d 601.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75060.

Decided Nov. 15, 1999.

602

*Law Offices of Brian D. Kerns & Associates* and *Brian D. Kerns,* for appellee.

*Manos, Pappas & Stefanski Co., L.P.A., John M. Manos* and *Timothy A. McGee,* for appellants Mariann and James Dolosich.

*Connie M. Rosborough, pro se.*

*Gretchen Hirschauer; Kenen & Snider Co., L.P.A.,* and *Harvey A. Snider,* for appellant George Stecz.

TIMOTHY E. McMONAGLE, Judge.

Defendants-appellants Mariann and James Dolosich appeal the decision of the Cuyahoga County Common Pleas Court granting summary judgment in favor of plaintiff-appellee, State Automobile Mutual Insurance Company. For the reasons that follow, we affirm.

On September 20, 1995, Mariann Dolosich was injured when she was attacked and bitten by a horse in the indoor riding arena of the Dogwood Trails stables, located at 954 Center Road, Hinckley, Ohio. The property is owned by appellant George Stecz. At the time of the incident, Stecz was covered by a State Automobile Mutual Insurance Company homeowner's policy, policy No. HDP4429397, which provided coverage for bodily injury, property damage, and medical payments to others resulting from an accident during the policy period.

On January 24, 1997, Mariann and James Dolosich filed a personal injury lawsuit in the Court of Common Pleas of Medina County, Ohio, naming Dogwood Trails, George Stecz and Connie Rosborough as defendants. *Mariann Dolosich et al. v. Dogwood Trails et al.,* Medina C.P. No. 97CIV0323.

On September 9, 1997, State Automobile Mutual Insurance Company filed this declaratory judgment action seeking a declaration that Stecz's homeowner's policy does not provide for a defense or indemnification of George Stecz, Connie Rosborough, or Dogwood Trails in the Medina County personal injury lawsuit.

The parties took the depositions of Mariann Dolosich, Connie Rosborough, and George Stecz. Mariann Dolosich testified that in July or August 1995, she responded to an advertisement in a local newspaper regarding the sale or rental of a horse at Dogwood Trails. When she drove up to the property, she saw a sign near the driveway that said "Dogwood Trails." Dolosich met with Connie Rosborough, who informed Dolosich that she was "in charge of running things" at Dogwood Trails. Dolosich testified that she told Rosborough that she wanted to lease a horse named Patches, but after checking with George and George's ex-wife Josephine, who lived with George, Rosborough informed her that she could not lease Patches. Eventually, Dolosich and Rosborough agreed that Dolosich would lease a horse named Treasure for $150 per month. In exchange, Dolosich could ride and groom Treasure whenever she wanted. After riding Treasure a few times, however, Dolosich decided that she was not comfortable on him, so she and Rosborough arranged for Dolosich to lease a horse named Zack at the same price. Dolosich testified that she made at least two lease payments of $150 each to Dogwood Trails.

During July and August 1995, Dolosich rode Zack several times a week. Dolosich testified that on these occasions, she observed several other people who boarded their horses at Dogwood Trails either riding or grooming their horses.

Dolosich testified that she was injured on September 20, 1995, while she was riding Zack in the indoor riding arena at Dogwood Trails. A horse named Skip, who was also being ridden in the indoor arena, jumped on Zack, knocked Dolosich off her horse, and then bit her arm and back.

Connie Rosborough testified that the genesis of her business arrangement with George and Josephine was in January 1995, when she responded to a newspaper advertisement regarding the rental of one of the barns on Stecz's property. Rosborough telephoned Stecz and spoke with him about renting the arena barn, but the rental price was too high. Approximately one month later, Rosborough called Stecz to discuss an arrangement whereby she could board her horse at Stecz's barn in exchange for her work around the barn. Rosborough testified that in a subsequent meeting, she, George, and Josephine discussed starting a stabling, boarding, and/or livery service on the premises. Rosborough testified that because the cost of insurance for a livery operation was too high, she, George and Josephine decided to establish a horse boarding and stabling business on the premises. Rosborough testified further that they decided to forgo liability insurance on the business because the cost of the premiums was too high.

According to Rosborough, Josephine decided upon the name "Dogwood Trails" and then painted a sign, stating "Dogwood Trails, Boarding," which Rosborough and George hung up near the driveway to the barns. It was agreed that Rosborough would act as the manager of the business and she had cards printed up identifying her as the manager at Dogwood Trails. Rosborough also distributed flyers in the local area regarding boarding, leasing, and trailering horses at Dogwood Trails. Rosborough testified that she, George, and Josephine jointly purchased two horses and a horse trailer for Dogwood Trails, with the intent of renting or leasing the horses for the business.

In June 1995, Josephine opened a checking account, under the name "George Stecz d/b/a Dogwood Trails," at Strongsville Savings Bank. Rosborough testified that she, George, and Josephine were joint signators on the account, which was used to pay operating expenses for the business. Rosborough testified that she deposited Dolosich's payments and the checks received from the persons who were boarding their horses at Dogwood Trails into the account and wrote checks on the account to pay for grain, hay, and two stable hands who worked at Dogwood Trails.

In his deposition, George Stecz testified that he is the owner of Cleveland Metallizing, Inc., where he works full-time. Stecz acknowledged that at the time of Dolosich's injury, he was conducting a "boarding business" at Dogwood Trails. Stecz testified that at the time of Dolosich's injury, there were four horses boarded at Dogwood Trails, although the goal was to board twenty-two horses, the maximum capacity of the barn, for a fee of $185 to $200 per month per horse.

Stecz testified that Rosborough was to be a "player" in the business. He admitted that he had a business relationship with Rosborough when Dolosich was injured, but denied that he was aware of any leasing arrangement between Dolosich and Dogwood Trails. Stecz also denied that he ever "rented" horses. Stecz admitted, however, that he took deductions on his income taxes based upon business expenses incurred by Dogwood Trails.

On June 15, 1998, State Auto filed a motion for summary judgment, arguing that Stecz's homeowner's insurance policy excludes coverage for injury or property damage arising out of Stecz's "business pursuits," and, therefore, State Auto has no duty to defend or indemnify Stecz, Dogwood Trails, or Rosborough in the Medina County personal injury action. Appellants opposed the motion. On July 16, 1998, the trial court granted State Auto's motion for summary judgment. On August 6, 1998, the trial court denied appellants' motion for reconsideration.

Appellants timely appealed, assigning one assignment of error for our review:

"The trial court erred in find[ing] that Mrs. Dolosich's injury arose out of or in connection with a business engaged in by George Stecz."

We review the trial court's granting of summary judgment *de novo* in accordance with the standards set forth in Civ.R. 56(C). *N. Coast Cable L.P. v. Hanneman* (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875, 878–879. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that support the requested judgment. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164, 1171–1172. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. *Id.* See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 473, 692 N.E.2d 198, 203–204; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

The construction of an insurance contract, like that of any other contract, is a matter of law. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. Courts are required to interpret the contract in such a way as to give effect to the intention of the parties at the time the agreement was entered into, as evidenced by the provisions of the contract. *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 10 O.O.2d 424, 164 N.E.2d 745; *Progressive Specialty Ins. Co. v. Easton* (1990), 66 Ohio App.3d 177, 583 N.E.2d 1064.

Because the insurance carrier typically drafts the policy, where policy language is ambiguous, that language is to be construed in the way that is most favorable to the insured. *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 173, 44 O.O.2d 147, 149, 239 N.E.2d 33, 35. This general principle applies with even greater force to language that purports to limit or to qualify coverage. *Id.; Watkins v. Brown* (1994), 97 Ohio App.3d 160, 646 N.E.2d 485, paragraph six of the syllabus. If an exclusionary clause will reasonably admit of an interpretation that would preserve coverage for the insured, then, as a matter of law, a court is bound to adopt the construction that favors coverage. *Id.; Lester v. State Farm Mut. Auto. Ins. Co.* (1989), 64 Ohio App.3d 52, 54, 580 N.E.2d 793, 794–795. If, however, an exclusionary clause has only one reasonable interpretation, a court is bound to enforce the provision accordingly. See

*Progressive Specialty Ins. Co. v. Easton* (1990), 66 Ohio App.3d 177, 180, 583 N.E.2d 1064, 1066–1067.

█ As an initial matter, we note that neither appellants nor appellee cite the correct applicable exclusion from Stecz's policy. Appellants argue that the policy excludes coverage for personal liability and medical payments to others "arising out of or in connection with a business engaged in by an insured." Appellants contend that the exclusion does not apply, however, to "activities which are usual to non-business pursuits." Appellee, on the other hand, contends that Stecz's homeowner's policy contains the following exclusion:

"1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

" * * *

"b. Arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an injured."

Neither appellants nor appellee are correct.

Appellee cites the exclusion before it was modified in 1987 by the Supplemental Provisions to the policy. As modified, the exclusion provides:

"1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

" * * *

"b.(1) arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless or its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business;

"b.(2) arising out of the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply to the rental or holding for rental of an insured location:

"(i) on an occasional basis if used only as a residence:

"(ii) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

"(iii) in part, as an office, school, studio or private garage."

As modified, the exclusion does not contain an exception for activities which are usual to non-business pursuits. "Business" is defined in the policy as including "trade, profession, or occupation."

█ In *Lenart v. Doversberger* (May 12, 1994), Cuyahoga App. Nos. 65372 and 65373, unreported, 1994 WL 189433, this court recognized that activities

which are not the principal business of an insured can nevertheless constitute a "business pursuit" for purposes of a policy exclusion. The court stated:

"In *State Farm Fire & Casualty Co. v. Hiermer*, 720 F.Supp. 1310 (S.D.Ohio, 1988), aff'd, 884 F.2d 580 (6th Cir.1989), the federal court applying Ohio law held that in order for an activity to constitute a 'business pursuit,' two elements must be satisfied, *viz.*, (1) continuity; and (2) profit motive. The federal court relied in part upon *Asbury v. Indiana Union Mutual Insurance Co.* ( [Ind.App.] 1982), 441 N.E.2d 232, 240, in which the Indiana court interpreted the two elements requisite to a business pursuit as follows:

" ' "[A]s to the first, there must be a customary engagement or a stated occupation; and, as to the latter, there must be shown to be such activity as means of livelihood, gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements." ' "

The court explained that a profit motive does not necessarily require an actual profit and, further, that actual profit need not be an immediate or even primary consideration of a business pursuit. *Id.*

In their assignment of error, appellants argue that the trial court erred in granting State Auto's motion for summary judgment because Stecz's horse boarding business lacked continuity and a profit motive and, therefore, was not a business engaged in by Stecz. Appellants contend that there was no continuity to the business because the Steczs had started boarding horses only eight months prior to Mariann Dolosich's injury. Further, they contend that there was no profit motive for the business because the income for the four horses boarded at Dogwood Trails amounted to less than $500 per month and was used "exclusively" to pay the expenses of maintaining the horses that resided at Dogwood Trails. We disagree.

Regardless of whether Stecz's horse boarding business realized an actual profit, continuity and profit motive were evident. First, eight months of continued operation is sufficiently long to demonstrate continuity. Moreover, although the business began only eight months prior to Dolosich's injury, the business clearly had a long-term plan. Stecz testified that although there were only four horses boarded at Dogwood Trails at the time of Dolosich's injury, the plan was to eventually board twenty-two horses, the maximum capacity of the barn, for a fee of $185 to $200 per month per horse.

It is also apparent that the business was started with a profit motive. Stecz testified that Rosborough was to be a "player" in the business and, in fact, that she had entered into the business with him and Josephine because there was a possibility that she might be laid off at her current secretarial position and she was hoping that Dogwood Trails could replace her current job. Stecz also

testified that he took deductions on his income taxes based upon the business expenses incurred by Dogwood Trails.

Appellants also argue that Stecz's primary "trade, profession, or occupation" is his metallizing company. Therefore, they contend, even if Stecz was boarding horses at Dogwood Trails for a fee, because the business is not his primary business, it is not excluded from coverage. Appellants' argument is without merit.

The "Definitions" section of Stecz's policy provides that " 'business' includes trade, profession or occupation." There is no reference in the definition to the *primary* trade, profession or occupation of the insured. Moreover, because the word "includes" is a term of expansion, the definition here must be read to mean that "business" includes, but is not limited to, the primary trade, profession or occupation of the insured.

Appellants also argue that Dolosich did not board a horse at Dogwood Trails and was not injured by a boarded horse. Rather, she was injured by a horse that she was leasing from George Stecz on a monthly basis. Therefore, appellants contend, even if Stecz was running a "horse boarding" business at Dogwood Trails, Dolosich's injury did not arise out of his operation of the business. We disagree.

Connie Rosborough testified that she passed out flyers in the local area regarding boarding and leasing horses at Dogwood Trails. She also testified that she, George, and Josephine jointly purchased two horses for Dogwood Trails, with the intent of renting or leasing the horses for the business. Moreover, although Stecz testified that he was not aware that Dolosich was leasing Zack from Dogwood Trails, he also testified that he had seen Dolosich riding Zack in the indoor riding arena at Dogwood Trails several times prior to the accident on September 20, 1995. Accordingly, it is apparent that leasing horses was part of the business of Dogwood Trails and that Dolosich's injury arose out of the business.

Appellants also argue that the business exclusion in Stecz's homeowner's policy does not apply to conduct ordinarily incident to a nonbusiness pursuit. Appellants contend that Stecz's ownership of horses was a nonbusiness pursuit. Therefore, appellants contend, because Mariann Dolosich was merely "exercising" Zack on Stecz's property, her injury arose out of conduct ordinarily incident to a nonbusiness pursuit. Appellants' argument has no merit.

First, we note that Stecz's policy does not contain the exception argued by appellants. Furthermore, we have already determined that Stecz was engaged in the business of boarding and leasing horses at Dogwood Trails. Contrary to appellants' argument, Dolosich was not merely "exercising" Zack for Stecz when

she was injured. Rather, she was riding Zack in the indoor riding arena at Dogwood Trails for her pleasure, pursuant to her lease arrangement with Dogwood Trails. Accordingly, even if Stecz's policy did contain an exception for conduct ordinarily incident to a nonbusiness pursuit, the exception would not apply to Dolosich's injury.

Courts must interpret insurance contracts " '[t]o the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.' " *Lenart, supra,* quoting *Eick v. Cent. Res. Life of N. Am. Ins. Co.* (July 9, 1987), Cuyahoga App. No. 52188, unreported, 1987 WL 14186. The fact that Stecz, Josephine, and Rosborough investigated the cost of liability insurance for Dogwood Trials, but decided not to purchase it because the premiums were too high, demonstrates that Stecz knew that his State Auto homeowner's policy would not cover the business.

Accordingly, the trial court did not err in granting State Auto's motion for summary judgment. State Auto has no duty to defend or indemnify George Stecz, Connie Rosborough, or Dogwood Trails in the Medina County personal injury lawsuit.[1]

Appellants' assignment of error is overruled.

*Judgment affirmed.*

O'DONNELL, P.J., and MICHAEL J. CORRIGAN, J., concur.

---

1. Because we conclude that the trial court properly granted summary judgment on the basis of the exclusion set forth in Section II, 1.b.(1), *i.e.,* that Stecz's horse boarding activity was a business excluded from coverage, we need not reach appellee's argument that the exclusion set forth in 1.b.(2), which precludes coverage for injury arising out of the rental of any part of the premises, also applies. Although appellee raised this argument in its reply brief filed with the trial court on July 29, 1998, the trial court granted summary judgment on July 16, 1998 and, accordingly, did not award summary judgment on this basis.