The plaintiffs, John P. Vallas, Louis P. Vallas, and McCurtin Creek, Ltd., appeal from a summary judgment in favor of the defendants Cincinnati Insurance Company ("CIC") and Alabama First Insurance Company ("AFIC"). The plaintiffs brought this action for a declaratory judgment against Paul L. Smith, Janet L. Smith, CIC, and AFIC to determine the rights and obligations of the parties under homeowner's insurance policies issued by AFIC and CIC.[1] The sole issue is whether the activity, out of which an action by the Smiths against John and Louis Vallas arose, was a "business" or "business pursuit" within the meaning of the exclusions of the homeowner's policies issued by CIC and AFIC.
A summary judgment under Rule 56, Ala.R.Civ.P., is proper when the trial court determines that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Lee v. Clark Assocs. Real Estate, Inc.,512 So.2d 42, 44 (Ala. 1987); George v. Federal Land Bank ofJackson, 501 So.2d 432, 434 (Ala. 1986). When the movant makes a prima facie showing that no genuine issue of material fact exists, the nonmovant then has the burden to introduce substantial evidence creating such an issue. Rule 56(e), Ala.R.Civ.P.; § 12-21-12, Alabama Code 1975; Bean v. Craig,557 So.2d 1249, 1252 (Ala. 1990). Like the trial court, this Court views the evidence and resolves all reasonable doubts in favor of the nonmovant. Specialty Container Mfg., Inc. v. RuskenPackaging, Inc., 572 So.2d 403, 404 (Ala. 1990).
Viewed in favor of the nonmovant plaintiffs, the evidence indicates the following:
In 1977 John P. Vallas, Louis P. Vallas, Paul L. Smith, and five others formed a limited partnership called McCurtin Creek, Ltd., for the stated purpose of purchasing and later subdividing and selling for profit a 220-acre tract of land near Bay Minette, *Page 569 
Alabama. John Vallas and Paul Smith were the general partners of the McCurtin Creek limited partnership. John Vallas was also a limited partner, as was his brother Louis Vallas.[2]
The McCurtin partnership purchased the 220-acre tract of land from Paul Smith, who was a real estate broker. For the first six years of the partnership's existence, Paul Smith managed its affairs; however, after 1983 John Vallas performed minor paperwork for the partnership. Louis Vallas has never taken any part in the management of the limited partnership. Over a period of 15 years, the McCurtin partnership sold three parcels from the 220-acre tract it purchased in 1977.
During the existence of the partnership, Louis Vallas was in the vending-machine business and John Vallas owned and operated, on a full-time basis, a Captain John's seafood restaurant in Mobile. In his deposition, however, John Vallas estimated that over a 30-year period, he had invested approximately $500,000 in about 60 or 70 limited partnerships investing in real estate and had derived between $3 and $4 million in income from his these limited-partnership investments.
Eleven years after McCurtin Creek, Ltd., bought the 220-acre tract of land, John P. Vallas inadvertently learned from a logger named John Zukley that Paul Smith had had another logger named Max Chapman harvest and sell timber growing on land owned in part by Smith personally and in part by the partnership. The timber was sold to three mills, and Smith was paid $26,000, of which $12,000 was attributable to timber cut from partnership land. After consulting with his attorney, John Vallas met with Ms. Laura Dahle, a Baldwin County assistant district attorney, and told her what he had learned from Chapman. On the basis of testimony from John Vallas and others, a grand jury indicted Paul Smith. Shortly before the date set for trial, John D. Whetstone, the district attorney for Baldwin County, dismissed the indictment, concluding that the controversy was properly a civil matter.
In November 1991, Paul and Janet Smith brought an action for damages and for an accounting of partnership accounts, against John Vallas, Louis Vallas, McCurtin Creek, Ltd., and sundry fictitiously named defendants. Against John Vallas, Louis Vallas, and McCurtin Creek, Ltd., the Smiths alleged malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress, in connection with the issuance of the indictment and with the arrest and imprisonment of Paul Smith. The Smiths also alleged conversion in connection with the placement of the $26,000 in proceeds from the sale of the timber in a partnership account.
John Vallas requested that AFIC provide a defense and indemnity for any judgment in the Smiths' action under a homeowner's policy issued to John and Katherine Vallas. The AFIC homeowner's policy provided, in pertinent part:
"COVERAGE E — Personal Liability
 "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
 "1. pay up to our limit of liability for the damages for for which the insured is legally liable; and
 "2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . ."
 "1. Coverage E . . . [does] not apply to bodily injury or property damage:
 "a. which is expected or intended by the insured;
 "b. arising out of business pursuits of an insured. . . ."
 "For an additional premium, under Coverage E — Personal Liability, the definition bodily injury
is amended to include personal injury.
 " 'personal injury' means injury arising out of one or more of the following offenses: *Page 570 
 "1. false arrest, detention or imprisonment, or malicious prosecution; . . . ."
 Under the AFIC policy, " 'business' includes trade, profession, or occupation."
 The plaintiffs also sought coverage under another homeowner's insurance policy issued to John Vallas by CIC. The CIC policy provided coverage for "personal injury,"[3] but stated the following exclusion:
 "1. Coverage E — Bodily Injury, Personal Injury and Property Damage Liability and Coverage F — Medical Payments to Others do not apply to bodily injury, personal injury, or property damage:
 "a. which is expected or intended by the insured;
 "b. arising out of any activities of any insured in connection with
 "(i) a business owned or controlled by any insured or owned by a partnership or joint venture of which any insured is a partner or member,
 "(ii) a business organization, school board or political subdivision of which the insured is an officer (including, but not limited to, police officer), director, commissioner, trustee or an elected or appointed official. . . ."
The CIC policy defined "business" as follows:
 " 'business' includes but is not limited to any trade, profession or occupation of any kind including farming. Farming includes the growing or raising of produce, livestock or poultry for sale. Newspaper delivery, babysitting, caddying, lawn care and similar incidental business activities by a minor resident of your household are not considered business."
In January 1992, John Vallas, Louis Vallas, and McCurtin Creek, Ltd., brought this action for a declaratory judgment, seeking a determination (1) that the homeowner's insurance policies issued by CIC and AFIC provided coverage for any matter arising from the Smiths' action against John and Louis Vallas, (2) that CIC and AFIC had an obligation under the policies to provide the plaintiffs with a defense, and (3) that CIC and AFIC were liable for any judgments entered against the plaintiffs in that action.
Following discovery, AFIC moved for a summary judgment. In support of its motion for summary judgment, AFIC introduced excerpts of the deposition of John Vallas, the certificate of the limited partnership of McCurtin Creek, Ltd., and a copy of the AFIC homeowner's policy issued to John Vallas. In opposition, the plaintiffs filed the deposition and affidavit of John Vallas, John Vallas's answers to interrogatories, and AFIC's response to the plaintiffs' request for production. In August 1992, the trial court granted AFIC's motion for summary judgment.
CIC also filed a motion for summary judgment, supported by the pleadings, a copy of the complaint in the Smiths' action, the deposition of John Vallas, and a copy of the CIC homeowner's policy. In opposition to CIC's motion for a summary judgment, and in support of his own motion for a summary judgment, Louis Vallas filed a copy of his own affidavit. John Vallas and McCurtin Creek, Ltd., also filed a motion for a summary judgment against CIC. In opposition to Louis Vallas's and John Vallas and McCurtin's motions for summary judgment, CIC filed a copy of the CIC homeowner's policy.
After a hearing, the trial court granted CIC's motion for a summary judgment and denied both the plaintiffs' motion to reconsider or set aside the summary judgment in favor of AFIC and their motions for summary judgment against CIC.
The issue is whether the Smiths' action against the plaintiffs arose out of a "business pursuit" under the AFIC policy or a "business" activity under the CIC policy.
The plaintiffs argue that the terms "business pursuits" and "business" are ambiguous and, therefore, that the exclusions of the AFIC and CIC policies should be construed for the benefit of the insured and limited to their narrowest reasonable application. The *Page 571 
plaintiffs contend that, construed narrowly, the exclusions do not apply to what, they say, is essentially an investment. The plaintiffs contend that their limited or negligible involvement in the McCurtin limited partnership and the minimal amount of business activity conducted by the McCurtin partnership over the term of its existence show that the controversy arose from a dispute among joint investors, not joint owners of an active business.
The word "business" and the phrase "business pursuits" appear in many insurance policies, and courts from other jurisdictions have construed and applied this language in a variety of factual circumstances. E.g., Saha v. Aetna Cas. Surety Co.,427 So.2d 316 (Fla.Dist.Ct.App. 1983); Eyler v. NationwideMutual Fire Ins. Co., 824 S.W.2d 855 (Ky. 1992); Grossman v.American Family Mut. Ins. Co., 461 N.W.2d 489 (Minn. Ct. App. 1990); Brickell v. United States Fire Ins. Co.,436 So.2d 797 (Miss. 1983). See generally Annot., Construction andApplication of "Business Pursuits" Exclusion Provision inGeneral Liability Policy, 48 A.L.R.3d 1096 (1973).
This Court has had several occasions to interpret and apply the terms "business" and "business pursuits." Pullen v.Cincinnati Ins. Co., 400 So.2d 393 (Ala. 1981); Stanley v.American Fire Cas. Co., 361 So.2d 1030 (Ala. 1978). InStanley, the Court held that an insured's babysitting for remuneration constituted a "business pursuit" within the meaning of a homeowner's policy, which excluded coverage for "bodily injury/property damage arising out of business pursuits of any insured except activities therein which are ordinarily incidental to non-business pursuits." 361 So.2d at 1032-33. InStanley, a child in the insured's care was injured when she fell backwards into a bed of hot coals in the insured's fireplace. For several months before the accident, the insured had babysat the children of various friends and neighbors in her home. As compensation for her services, the insured received $3 per child, per day.
In holding that the insured's supervision of children for remuneration constituted a "business pursuit," the Court inStanley quoted with approval language from a California Court of Appeals opinion defining "business" and "business pursuit":
 " 'Business' in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood. While 'business pursuit' in some contexts is synonymous with 'business,' it more accurately denotes a continued, extended or prolonged course of 'business or occupation.' "
Id. at 1033 (quoting Crane v. State Farm Fire Cas. Co.,14 Cal.App.3d 727, 92 Cal.Rptr. 621 (Dist.Ct.App.), rev'd,5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971)). Although the Stanley Court stated that the exclusionary provision at issue was "poorly worded" and that it could have been drafted with greater specificity, the Court did not find it ambiguous in the factual circumstances of the case. 361 So.2d at 1033.
Although the AFIC and CIC policies could have defined the terms "business" and "business pursuits" more clearly, we cannot say that they are ambiguous in the circumstances of this case. See Stanley v. American Fire Cas. Co., supra, Therefore, when they are applied as written, we think the "business pursuits" and "business" exclusions of the AFIC and CIC policies, respectively, apply to exclude coverage for any bodily injury or property damage arising out of John Vallas's involvement in the limited partnership.
Considering the CIC policy first, we cannot say that the limited partnership, which was formed to buy and sell investment real property for capital gain, was not "an undertaking . . . for gain [or] profit." Likewise, we cannot say that the limited partnership was not a "business pursuit." Although the plaintiffs argue that the limited partnership activity was essentially a passive, real estate investment and that the term "business" signifies only an active business with an office, employees, equipment, etc., we think the term has a much broader meaning than they would admit. As stated inStanley, "business pursuits," although synonymous with "business" in some circumstances, signifies, more accurately, "a continued, extended, or prolonged course of business," i.e., in the circumstances *Page 572 
of this case, a continued, extended, or prolonged undertaking for gain or profit. The evidence in the record clearly shows that when this action was filed, John Vallas, the insured, was a general partner in a limited partnership that had been in existence for 15 years and that had disposed of three parcels of land, presumably for profit, during that period. Therefore, we hold that the McCurtin Creek limited partnership, of which the insured John Vallas was a general partner, was a "business pursuit" within the meaning of the exclusion in the CIC policy.
Based on the foregoing, we hold that the AFIC and CIC policies do not extend coverage to the injuries on which the the Smiths' action is based and that AFIC and CIC are not obligated either to provide the plaintiffs with a defense or to indemnify them against a judgment entered against them in that action. Therefore, we affirm the summary judgment in favor of AFIC and CIC.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
[1] Paul L. Smith and Janet L. Smith are not parties to this appeal.
[2] The six limited partners of McCurtin Creek, Ltd., were James P. Vallas, Louis P. Vallas, William Vallas, George J. Roussos, and John P. Vallas.
[3] The CIC policy defined "personal injury" as "injury to others arising out of: a libel, slander, defamation of character, false arrest, willful or false detention or imprisonment, wrongful eviction or entry, malicious prosecution, humiliation, or invasion of privacy and if arising out of any of these, mental anguish, mental injury, or shock."