Argued and submitted November 14, 2000, affirmed January 17, 2001

## Donald HIEBERT,
*Appellant,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Respondent.*

(98C-15722; CA A108666)

18 P3d 397

14

J. Michael Alexander argued the cause for appellant. With him on the briefs was Swanson, Lathen, Alexander & McCann.

Dennis W. Percell argued the cause for respondent. With him on the brief was Arnold, Gallagher, Saydack, Percell & Roberts.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

This case arises out of an insurance coverage dispute between plaintiff Donald Hiebert and defendant Farmers Insurance Company of Oregon. The specific issue is whether plaintiff's homeowner's liability insurance policy covers losses incurred by plaintiff as a result of a judgment entered against him in a separate wrongful death action. After judgment was entered against plaintiff in that case, plaintiff initiated this action against his insurer for breach of the duty to defend and breach of the duty to pay, contending that the losses were covered. Defendant moved for summary judgment on both claims. Regarding the duty to pay claim, defendant contended that plaintiff's losses were excluded from coverage as losses "[a]rising from or during the course of **business** pursuits of the **insured**." (Boldface in original.) Plaintiff cross-moved for partial summary judgment on the duty to defend claim. The trial court granted summary judgment for plaintiff on the duty to defend claim and granted summary judgment for defendant on the duty to pay claim. Plaintiff appeals.[1] We affirm.

We review the trial court's entry of summary judgment to determine whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997). We state the facts and all reasonable inferences to be derived from the facts in the light most favorable to plaintiff, the nonmoving party. *Id.*

Plaintiff owns and operates the Detroit Lake Marina, which is a business that consumes approximately 90 percent of his professional time. Plaintiff also owns Hiebert Construction. Hiebert Construction is in the business of dismantling and transporting scrap metal. Payment for those services is computed on a per-ton basis. On occasion, plaintiff has retained some of the scrap materials for his personal use.

---

[1] Defendant does not challenge the trial court's entry of summary judgment for plaintiff on the duty to defend claim. *See Northwest Pump v. American States Ins. Co.*, 144 Or App 222, 227, 925 P2d 1241 (1996) (explaining that the duty to defend is independent of the duty to indemnify or pay).

In 1989, while plaintiff was loading scrap metal at a location in Montana, he learned of a rock crusher that could not be used as scrap metal but whose owner wished to dispose of it.[2] After returning to Oregon, plaintiff spoke with two or three people about possible uses for the rock crusher. One person, Schultz, indicated that he would be willing to trade an incinerator for the rock crusher. Plaintiff previously had traded machinery and equipment with Schultz. At that time, plaintiff did not expect to make a profit or to gain any income or compensation from the rock crusher.

In September 1993, plaintiff returned to Montana to dismantle and transport scrap metal. On September 19, 1993, he purchased the rock crusher from its owner for its per-ton scrap metal value. Plaintiff paid for the crusher by means of an offset against the amount that was owed to him for his work dismantling and transporting scrap metal. Plaintiff transported the crusher to Oregon and stored it on his father's property in Idanha; he charged the cost of the crusher and his expenses in transporting it to Oregon to Hiebert Construction. Plaintiff spoke to Schultz and another acquaintance, Fleming, about the crusher. Plaintiff hoped that Fleming would buy the crusher for what plaintiff had paid for it, plus his transportation expenses; he was also "looking" to get "something on top of that." Plaintiff did not succeed in finding a purchaser. He eventually painted the crusher and performed some minor work on it, in order to make it more visually acceptable to town officials and to make it more saleable.

In October 1994, a child was killed while playing on the machine. The personal representative of the child's estate initiated a wrongful death action against plaintiff. Plaintiff tendered the defense of the claim to defendant.

The homeowner's policy that defendant issued to plaintiff contained an exclusion from coverage for losses for "**bodily injury** * * * [a]rising from or during the course of **business** pursuits of an **insured**." (Boldface in original.) The

---

[2] The record also refers to the machine as a coal crusher. For consistency, we refer to it as a rock crusher.

policy defined "business" as "any full or part-time trade, profession or occupation." Relying on that exclusion, defendant declined to defend against the wrongful death action and declined to pay plaintiff's losses resulting from that action. Plaintiff settled the wrongful death claim for $40,800, then brought this action for breach of the duty to defend and breach of the duty to pay. As earlier noted, the trial court determined that defendant did not have a duty under the insurance policy to pay the claim and entered summary judgment accordingly.

On appeal, the sole issue presented is whether the "business pursuits" exclusion in the policy unambiguously applies to the fatal injury arising from the rock crusher, thus defeating coverage for the claim. Plaintiff argues that the relied-on exclusion does not apply, as a matter of law, to this injury. Alternatively, plaintiff argues that the scope of the exclusion is ambiguous and should be determined by a jury. In particular, plaintiff asserts that the exclusion either does not apply or presents a factual question for a jury's resolution because, although he "occasionally picks up items that might be of some value to him, either personally or in his other work," he "does not engage in regular work buying and selling scrap." Plaintiff also points to evidence that he "had no intent to make a profit" from the rock crusher. Defendant, in effect, responds that the exclusion plainly applies to plaintiff's purchase and retention of the rock crusher despite the possible irregular or occasional nature of plaintiff's scrap-metal business activities. We agree with defendant.

The interpretation of an insurance policy is a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992); *see also Protection Mutual Insurance Co. v. Mitsubishi Silicon*, 164 Or App 385, 389, 992 P2d 479 (1999), *rev den* 330 Or 331 (2000). The primary goal in construing an insurance contract is to ascertain the intention of the parties. To that end, we begin with the terms and conditions of the policy itself. If a term at issue is not defined in the policy, we consider the plain meaning of the term. If the term has more than one plausible meaning, we scrutinize each meaning in the light of the particular context in which the term is used in the policy and in the context of the policy as a whole. If, after scrutiny, both proposed

interpretations remain reasonable, we interpret the provision against the party who drafted it. *Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 620, 984 P2d 917, *rev den* 329 Or 553 (1999) (citing and quoting *Baumann v. North Pacific Ins. Co.*, 152 Or App 181, 186, 952 P2d 1052, *rev den* 327 Or 621 (1998)); *Smith v. State Farm Insurance*, 144 Or App 442, 446-47, 927 P2d 111 (1996).

■■ Here, the question is whether plaintiff's acquisition and storage of, and attempts to sell or trade, the rock crusher constituted "business pursuits" within the meaning of the policy's exclusion for such activities. The policy does not define the phrase "business pursuits" *per se*. It does, however, define what "business" means. According to the definition in the policy, business is "any full or part-time trade, profession or occupation." Considered in isolation, the terms "trade," "profession," and "occupation," might give rise to some uncertainty as to whether a business endeavor must be a principal one or otherwise a regular pursuit.[3] Considered in context, however, no such uncertainty reasonably exists. The policy definition of "business" expressly refers to *any* trade, profession, or occupation. Equally significant, it expressly includes *part-time* trades, professions, or occupations. Those qualifiers eliminate any possible ambiguity and make it clear that the exclusion encompasses occasional or secondary business pursuits. Consequently, based on the text of the exclusion and its related definition of "business," we conclude that the policy exclusion for losses arising out of "business pursuits" applies to all compensating activities of an insured, including the insured's principal gainful activity or activities and all incidental or occasional ones.

The evidence is undisputed that plaintiff purchased the rock crusher for the amount of its scrap-metal value; that

---

[3] The dictionary definition of those terms, for example, suggests that they commonly refer to regular and principal livelihoods. In particular, the term "trade" means, in part, "the business one practices or the work in which one engages regularly : gainful employment : means of livelihood : occupation." *Webster's Third New Int'l Dictionary*, 2421 (unabridged ed 1993). The term "profession" is defined to include "a calling requiring specialized knowledge and * * * preparation" and as "a principal calling, vocation, or employment." *Id.* at 1811. Finally, "occupation" is defined in part as "an activity in which one engages" and as "the principal business of one's life : a craft, trade, profession, or other means of earning a living : employment, vocation." *Id.* at 1560.

he transported it to Oregon for the purpose of selling it or trading it for some other item of equipment; that he made efforts toward that end, including discussing the machine with various acquaintances and painting it to make it more saleable; and that, although he did not necessarily expect to achieve a profit from the sale or trade of the crusher, he hoped and intended to be compensated for at least its purchase price and his expenses in transporting it to Oregon. Those activities constituted "business pursuits" within the meaning of the policy exclusion. Accordingly, plaintiff's losses resulting from the death of the child while playing on the rock crusher were not covered under the policy. The trial court did not err in granting summary judgment to defendant on plaintiff's claim for breach of the duty to pay.

Affirmed.