# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JULY 19, 2007 Session

## STATE FARM FIRE & CASUALTY COMPANY v. DARRELL SPARKS, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-005493-02    D'Army Bailey, Judge

---

### No. W2006-01036-COA-R3-CV  -  Filed December 7, 2007

---

This appeal arises out of an action for declaratory judgment brought by an insurer. The insurer asked the court to determine whether its homeowners' and personal liability umbrella policies afforded coverage and required defense of a tort action filed against its insured. The tort action involved an accident that occurred at the site of an oil well, which was owned and operated by a partnership in which the insured parties were partners. The insureds' insurance policies excluded coverage for losses arising out of their "business pursuits." The trial court granted partial summary judgment to the insureds and ordered the insurer to defend and indemnify the insureds in the underlying tort action. For the following reasons, we reverse.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Richard W. Wackerfuss, Matthew S. Russell, Memphis, TN, for Appellant

Louis J. Miller, Memphis, TN, for Appellees Darrell Sparks and Randy Cook

Raymond L. Niblock, *Pendente Pro Hac Vice*, Fayetteville, AR, for Appellee Sharon Bennett

John Appman, Jamestown, TN, Local Counsel for Raymond L. Niblock

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In October of 1985, Darrell Sparks and Randy Cook invested in T & A Oil, a partnership organized by their friend and co-worker, Melvin Thompson, Jr. The three men were employed full-time in an unrelated business, Tri-State Delta Chemicals, where Mr. Sparks worked in the accounting department and Mr. Cook was a manager and later president of the company. Mr. Sparks and Mr. Cook executed identical partnership agreements with T & A Oil that provided, in part:

> T & A Oil, a partnership composed of Melvin Thompson, Jr., . . . hereinafter referred to as "Agent" and each of the other undersigned persons, hereinafter referred to as "Owners", hereby enter into a joint adventure for the purpose of acquiring and holding oil, gas and other mineral lease-hold interest[s] (hereinafter referred to as "working interest["]) and exploring for oil, gas and other minerals thereon, on terms of agreement as follows:
>
> 1. The purpose of this agreement is to provide a means whereby the Owner may engage in, and spread his participation over one oil and gas drilling ventures [sic], and for the administration, supervision and accounting of his investment by Agent. T & A Oil will act as agent for each Owner in the acquisition, testing, development and operation of working interest within Union County, Arkansas, and will administer, supervise and account to Owner for his investment, leasehold interest and income and expense.
>
> 2. (a) Owner hereby subscribes to this joint venture in the amount indicated below his signature on the last page hereof representing 18 units, with each unit being in the sum of $1,000.00.
> . . .
> (c) The business of theis [sic] Agreement shall commence at such time as the amount of the total of all subscriptions received equals the sum of $50,000.00.

Mr. Sparks and Mr. Cook each invested $18,000, representing eighteen units, in the partnership. The agreement further provided that upon the completion of a producing well, an "Operating Agreement" would be executed to govern the well's operation. The Operating Agreement was to provide for "insurance in sufficient amounts to cover bodily injury, death and property damage," and summaries of the insurance would be furnished to Owners upon request.

T & A Oil subsequently began operating a single oil well in Smackover, Arkansas, known as "Bennett No. 1 Well." Mr. Sparks and Mr. Cook traveled to the site of the well for a groundbreaking party. They did not visit the well site on any other occasion, and they were not involved with the day-to-day operations of the well. Mr. Sparks and Mr. Cook received periodic

profit distributions from T & A Oil, and every year since 1985, they received a "Form K-1" to file with their income tax returns reflecting their share of the partnership's income, credits, and deductions. In addition, Mr. Sparks maintained a T & A Oil checkbook, which he used to pay some of the partnership's monthly bills. He estimated that he spent ten to fifteen minutes per month paying these bills and communicating with T & A Oil's accountant, and he paid himself $50 per month for this service. Mr. Sparks invested in one other oil well in Oklahoma that was not owned by T & A Oil, and Mr. Cook invested in "a couple others" that were also unrelated to T &A Oil.

The T & A Oil well operated without interruption until July 4, 1997, when an accident occurred. The man in charge of pumping the well called Mr. Sparks and explained that two boys had climbed up an oil collection tank and thrown fireworks into it, causing it to explode. One of the boys was seriously injured, and the other was killed. Sharon Bennett subsequently filed a complaint on behalf of the two boys in the Circuit Court of Union County, Arkansas, against numerous defendants, including Mr. Sparks and Mr. Cook, individually and d/b/a T & A Oil Company ("the Arkansas litigation").

T & A Oil did not maintain an insurance policy covering bodily injury, death or property damage.[1] For defense of the Arkansas litigation, Mr. Sparks and Mr. Cook submitted the action to State Farm Fire & Casualty Company, the carrier of their homeowner's and personal liability umbrella insurance policies. State Farm conditionally accepted their defense request subject to a reservation of rights because of certain exclusions in the policies. The text of the respective policies was identical with the exception of the policy limits and their attached applications. The homeowner's policies issued to Mr. Sparks and Mr. Cook provided under "Exclusions," in relevant part:

> 1. Coverage L [Personal Liability] and Coverage M [Medical Payments to Others] do not apply to:
> . . .
> b. bodily injury or property damage *arising out of business pursuits of any insured* or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:
> (1) to activities which are ordinarily incident to non-business pursuits;
> . . .

(emphasis added). The policies defined "business" as "a trade, profession or occupation. This includes farming." The personal liability umbrella policies similarly provided the following exclusion:

> We will not provide insurance:

---

[1] Apparently, no one prepared an Operating Agreement to govern the details of operating the well, as required by the original partnership agreements. The Operating Agreement was meant to address the issue of liability insurance. Neither Mr. Sparks nor Mr. Cook ever inquired about the existence of an Operating Agreement or insurance coverage for the well.

. . .

6. for any loss *caused by your business pursuits* or arising out of business property:

a. unless:

(1) the underlying insurance listed on the Declarations provides coverage for the loss; and

(2) the loss does not involve an automobile, recreational motor vehicle, or watercraft.

. . .

(emphasis added). Again, "business" was defined as "a trade, profession or occupation."

State Farm has paid all attorneys' fees incurred thus far in the insureds' liability defense of the Arkansas litigation, but it filed this action seeking a declaratory judgment that it has no duty to defend or indemnify Mr. Sparks and Mr. Cook due to the "business pursuits" exclusions in their policies.[2] Mr. Sparks and Mr. Cook filed an answer and also sought a declaratory judgment, requesting a determination that State Farm was liable to defend and indemnify them in the Arkansas litigation pursuant to the coverage in their policies. They also filed a counterclaim against State Farm alleging violations of the Tennessee Consumer Protection Act and alternatively seeking attorney's fees pursuant to Tenn. Code Ann. § 23-79-209.[3]

Mr. Sparks and Mr. Cook subsequently moved for partial summary judgment as to State Farm's duty to defend and indemnify according to the policies. State Farm also filed a motion for summary judgment regarding the coverage issue. Mr. Sparks, Mr. Cook, and State Farm filed extensive stipulations of fact with respect to their cross motions for summary judgment, detailing the extent of the insureds' involvement in T & A Oil, the accident, and the events surrounding the Arkansas litigation. They also filed stipulated exhibits that included the relevant insurance policies, the T & A Oil partnership agreements, letters from State Farm regarding coverage, and a transcript of Mr. Sparks's statement to State Farm about the accident.

Following a hearing, the trial court entered an order on the cross motions, granting summary judgment in favor of State Farm and denying the partial summary judgment motion filed by Mr. Sparks and Mr. Cook. The court declared that State Farm had no obligation to defend and indemnify the insureds for any claims arising out of the accident, including but not limited to those in the Arkansas litigation.

---

[2] State Farm named as additional defendants Sharon Bennett, the plaintiff in the Arkansas litigation, and Earl Shipp, another investor and partner in T & A Oil who sought representation from State Farm pursuant to his homeowner's and umbrella policies. The trial court entered a default judgment against Mr. Shipp, and State Farm's obligations to him are not at issue in this appeal. Sharon Bennett filed a separate answer to the complaint for declaratory judgment and has taken the leading role in asserting that State Farm's policies provide coverage to Mr. Sparks and Mr. Cook. She has participated without objection, and her standing to pursue this matter is not questioned on appeal. *See Robinson v. Utica Mutual Ins. Co.*, 585 S.W.2d 593, n.1 (Tenn. 1979).

[3] There is no § 23-79-209 in Tennessee Code Annotated.

Mr. Sparks and Mr. Cook filed a motion to alter or amend the judgment, and Sharon Bennett filed a separate motion to alter or amend and a brief in support of her motion. Following another hearing, the trial court amended its final order to deny State Farm's motion for summary judgment and to grant partial summary judgment to Mr. Sparks and Mr. Cook. The court's order states, in part:

> Defendants Sparks and Cook had such a lack of involvement in the oil business at issue that it did not constitute a customary engagement or stated occupation, such that, under <u>Allstate Insur. Co. v. Godsey</u>, 1991 WL 261873 (Tenn. App. 1991) [no App'n. Perm. App. filed], it did not rise to the level of or constitute a business pursuit so as to be excluded from coverage under the subject State Farm policies . . . .

Accordingly, the court ordered State Farm to defend and indemnify the insureds and their interests in the Arkansas litigation. The order was made final pursuant to Tenn. R. Civ. P. 54.02, and State Farm filed a timely notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, State Farm presents the following issue for review:

Whether the business pursuits exclusions in the insurance policies at issue bar coverage for the defendants Sparks and Cook for their alleged vicarious liability in the Arkansas litigation, arising out of their ownership in the oil well that exploded, causing injury.

## III. STANDARD OF REVIEW

No presumption of correctness attaches to a trial court's findings in a summary judgment case. **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995). Our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. **Id.** A summary judgment is appropriate only when there is no genuine dispute of material fact with regard to the claim or defense asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. **Burgess v. Harley**, 934 S.W.2d 58, 62 (Tenn. Ct. App. 1996) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)). In order to satisfy its burden, the moving party must produce or point out evidence in the record which, if uncontradicted, entitles the movant to a judgment as a matter of law. **Id.** (citing *Armes v. Hulett*, 843 S.W.2d 427, 429 (Tenn. Ct. App. 1992)). "[W]hen the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury to resolve in favor of one party or the other." **Byrd v. Hall**, 847 S.W.2d 208, 214 (Tenn. 1993). "Issues regarding an insurer's duty to defend are matters of law and may be resolved by summary judgment when there are no genuine issues as to any material fact." **Travelers Indem. Co. of America v. Moore & Assocs., Inc.**, 216 S.W.3d 302, 305 (Tenn. 2007) (citing *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998)). On appeal, we review a trial court's interpretation of contract language *de novo* with no

presumption of correctness. ***Id.*** (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)).

## IV. DISCUSSION

An "insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." ***Travelers Indem. Co.***, 216 S.W.3d at 305 (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)). An insurer's duty to defend is broader than its duty to indemnify "because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." ***Id.*** "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." ***Id.*** (citing *Dempster Bros., Inc. v. U.S. Fid. & Guar. Co.*, 54 Tenn.App. 65, 388 S.W.2d 153, 156 (1964)). The issue for us, then, is to determine whether the damages sought in the Arkansas litigation are within the risk covered by the homeowners' and umbrella policies issued by State Farm.

In construing insurance policies, the words chosen to express the parties' intentions should be given their usual, natural and ordinary meaning. ***Victoria Ins. Co. v. Hawkins***, 31 S.W.3d 578, 580 (Tenn. Ct. App. 2000) (citing *Ballard v. N. Am. Life and Cas. Co.*, 667 S.W.2d 79 (Tenn. Ct. App. 1983)).

> Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, . . . .

***Id.*** at 580-81. In other words, policy language should not be given a forced construction that renders the policy ineffective or extends its coverage beyond its intended scope. ***Demontbreun v. CNA Ins. Companies***, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991) (citing *Dixon v. Gunter*, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982)). Insurance policies should be read as a whole, for the purpose of ascertaining and giving effect to the parties' intentions. ***Id.*** (citing *Blue-Diamond Coal Co. v. Holland-America lns. Co.*, 671 S.W.2d 829, 833 (Tenn. 1984); *English v. Virginia Sur. Co.*, 196 Tenn. 426, 430, 268 S.W.2d 338, 340 (1954)).

As previously discussed, the homeowners' policies at issue excluded coverage for "damage arising out of business pursuits of any insured," and defined "business" as "a trade, profession, or occupation," which included farming. The umbrella policies excluded coverage "for any loss caused by your business pursuits," and defined business as "a trade, profession, or occupation."[4] In *Robinson v. Utica Mut. Ins. Co.*, 585 S.W.2d 593, 595 (Tenn. 1979), the Tennessee Supreme Court noted that the language of the "business pursuits" exclusion has been the subject of many cases throughout the United States, in many different contexts, with divergent results. Some courts have held that the language is ambiguous, others have not, but nearly all have found it difficult to interpret and apply. *Id.* The *Robinson* Court "[did] not attempt to resolve the issue of whether the policy language is 'ambiguous' or merely 'difficult' to apply," but it stated that if the facts do not clearly bring a case within the ambit of the exclusion, doubts should be resolved in favor of coverage. *Id.* at 598. More recently, in *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 237 (Tenn. Ct. App. 2005) *perm. app. denied* (Tenn. Sept. 6, 2005), this Court considered a business pursuits exclusion that excluded coverage for damages arising "from or during the course of business pursuits of an insured." We concluded that such language is not ambiguous. *Id.* at 240. *See also White v. State Farm Mut. Auto. Ins. Co.*, 59 Tenn.App. 707, 720, 443 S.W.2d 661, 667 (1969) *perm. app. denied* (Tenn. July 22, 1969) (holding that a business pursuits exclusion in a farm liability policy was not ambiguous). Likewise, we find that the business pursuits exclusions in this case are not ambiguous.

There are relatively few Tennessee cases interpreting the business pursuits exclusion, and in the older cases, courts seemed to use a common sense approach to determine what constituted a business pursuit. In *White v. State Farm Mut. Auto. Ins. Co.*, 59 Tenn. App. 707, 443 S.W.2d 661 (1969) *perm. app. denied* (Tenn. July 22, 1969), the insured had a personal and farm liability policy that covered his farming business but excluded other business pursuits. "Business" was defined as a "trade, profession or occupation other than farming . . . ." *Id.* at 719, 443 S.W.2d at 666. The farmer subsequently became a partner in a business venture called M & W Dozer Work, which performed bulldozer work for the public, but not farming work. *Id.* at 715, 43 S.W.2d at 664. When an employee of M & W Dozer Work was injured, the farmer's insurance carrier denied coverage, contending that the farmer was engaged in an excluded business pursuit. *Id.* at 711, 43 S.W.2d at 663. A trial court held in favor of the insured, but this Court reversed. We found that the insurer intended that the coverage afforded by the policy would apply to the insured's individual liability as a farmer, and not to his individual liability as a member of a partnership engaged in the operation of a bulldozer for hire. *Id.* at 722, 43 S.W.2d at 667. As such, we held that the insurer was not liable to cover losses from the accident because it arose out of an excluded business pursuit.

In *Cincinnati Ins. Co. v. Shelby Mut. Ins. Co.*, 542 S.W.2d 822, 824 (Tenn. Ct. App. 1975) *perm. app. denied* (Tenn. Sept. 22, 1975), we held that a pet store owner who kept a lioness at his home while it was pregnant had been engaged in a business pursuit, so that his homeowner's policy did not provide coverage for injuries caused by the lioness.

---

[4] All defined terms were bolded throughout the policies, e.g., "**business** pursuits of any **insured**." We have removed the emphasis on defined terms in our discussion of the policies in this opinion.

In *Robinson v. Utica Mut. Ins. Co.*, 585 S.W.2d 593, 594 (Tenn. 1979), a grandmother was simultaneously caring for her grandchildren and babysitting an unrelated mentally disabled child for profit. She had begun caring for the disabled child as a result of a newspaper advertisement offering her childcare services. *Id.* Her homeowner's insurance policy contained a business pursuits exclusion and defined "business" as "a trade, profession or occupation, including farming . . . ." *Id.* at 595. The keeping of the unrelated child was deemed to be a business pursuit, while gratuitously caring for her grandchildren was found to be a "noncommercial activity."[5] *Id.* at 598.

*Tennessee Farmers Mut. Ins. Co. v. Anderson*, Rutherford Law No. 88-224-II, 1989 WL 22698, at *1 (Tenn. Ct. App. W.S. Mar. 17, 1989) *perm. app. denied* (Tenn. May 30, 1989), also involved a babysitting injury that occurred while the insured and her minor daughter were babysitting a young boy. The babysitter's insurer denied coverage under her property owner's policy claiming that the business pursuits exclusion applied. *Id.* The policy defined "business" as "a full or part time trade, profession or occupation." *Id.* at *3. We determined that the insured was not engaged in a business pursuit by babysitting the child, when the child's mother had simply approached the insured and initiated the arrangement as "a favor," the child's mother was generally paying the insured's minor daughter "spending money" for the babysitting, and the insured did not advertise or publicize the availability of childcare services. *Id.* at *5.

In *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, Shelby Law No. 22, 1989 WL 91082, at *1 (Tenn. Ct. App. W.S. Aug. 14, 1989), the owner of a dry cleaning business was engaged in a business pursuit when he injured an employee while at work.[6]

The first case in Tennessee applying any sort of test to determine what activities constituted "business pursuits" was *Allstate Ins. Co. v. Godsey*, No. 03A01-9107CV243, 1991 WL 261873 (Tenn. Ct. App. Dec. 13, 1991). In *Godsey*, an insured submitted a claim to his insurance company when his boat was stolen, but the insurance company denied coverage contending that the loss arose out of his business activities. *Id.* at *1. The insured was in the business of cleaning and refurbishing used cars for automobile dealers, and he also had a license to deal in boats and motorcycles, though he never bought or sold boats and did not use this boat in his business. *Id.* at *2. On appeal, the Eastern Section of this Court determined that the boat was not part of the insured's business, and the

---

[5] The *Robinson* case primarily dealt with an exception to the "business pursuits" exclusion for "activities . . . which are ordinarily incident to non-business pursuits." Several other Tennessee cases involving the business pursuits exclusion have also focused on the applicability of this exception, when the parties did not really dispute that they were engaged in a business pursuit. *See, e.g.*, *Cincinnati Ins. Co.*, 542 S.W.2d at 825 (keeping the lioness at home); *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, Shelby Law No. 22, 1989 WL 91082, at *1 (Tenn. Ct. App. W.S. Aug. 14, 1989) (concerning an injury from a fight at work). As a result, there is little Tennessee authority involving the interpretation and application of the business pursuits exclusion, itself, in detail. The homeowners' policies in the case at bar contain the same exception to the business pursuits exclusion that has been at issue in most Tennessee cases, but no one contends that Mr. Sparks and Mr. Cook's activities related to the oil well are activities ordinarily incident to non-business pursuits.

[6] But an exception to the business pursuits exclusion applied that is not applicable in this case. *See* n.5; *Glens Falls*, 1989 WL 91082, at *6.

Court cited with approval the test applied in a majority of states that "a 'pursuit' is a 'business' only if (1) there is a motive for profit AND (2) it is continued or regular activity." *Id.* at *3 (citing *Frankenmuth Mut. Ins. Co. v. Kompus*, 354 N.W.2d 303, 308 (Mich.App. 1984); *Bertler v. Employers Ins. of Wausau*, 271 N.W.2d 603, 607 (Wis. 1978); *Haley v. Allstate Ins. Co.*, 529 A.2d 394, 396 (N.H. 1987); *Fadden v. Cambridge Mut. Fire Ins. Co.*, 51 Misc.2d 858, 862, 274 N.Y.S.2d 235, 241 (1966)). The Court further explained:

> The actual existence of profit or other permanent work is not controlling. *See Saha v. Aetna Casualty & Surety Co.*, 427 So.2d 316, 318 (Fla.App.1983). The amount of effort and time put into a project is not controlling. *Randolph v. Ackerson*, 108 Mich.App. 746, 310 N.W.2d 865, 866 (1981). All these cases clearly indicate that if the "pursuit" is not continuous, it is not a business for the purpose of applying the business pursuit exclusion. As quoted in *State Mutual Cyclone Ins. Co. v. Abbott*, 52 Mich.App. 103, 216 N.W.2d 606 (1974): "To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there *must be a customary engagement or a stated occupation*,...." Quoted in *Frankenmuth Mutual Ins. Co.*, 354 N.W.2d at 308. (Emphasis ours.)

*Godsey*, 1991 WL 261873, at *3. In sum, the Court determined that the loss of the boat did not arise out of the insured's business pursuits.

The "business pursuits" test from *Godsey* was applied by this Court in *Mid-Century Ins. Co. v. Williams*, 174 S.W.3d 230, 240 (Tenn. Ct. App. 2005) *perm. app. denied* (Tenn. Sept. 6, 2005). In *Mid-Century*, we concluded that a childcare arrangement was an excluded business pursuit because, first, the insured provided such services with an expectation of compensation, which demonstrated a "motive for profit." *Id.* Then, we found that the pursuit was a "continued or regular activity" by considering its duration and frequency, because the insured kept the children for approximately seven months on a daily basis. *Id.* at 239. Therefore, the insured's homeowner's policy did not provide coverage for an accident arising out of her childcare activities. *Id.*

Applying these principles to the case at bar, we will determine whether Mr. Sparks and Mr. Cook's involvement with the oil well constituted an excluded business pursuit by considering whether they engaged in a continued or regular activity for the purpose of earning a profit, keeping in mind a common understanding of the term "business pursuits."

### A.    Profit Motive

Mr. Sparks and Mr. Cook stipulated to the fact that they "[b]oth invested in the Well to make money." Mr. Cook explained in his deposition that when their friend approached him about the opportunity, he agreed to invest because "[i]t was an investment, and it was a chance to make some

money . . . ." Mr. Sparks similarly stated that they believed they had "an opportunity to make some money on an investment." However, on appeal, they argue that any profit motive they had "is belied by the fact that the tax returns [Forms K-1] reflected 8 years of losses" during the time that they were partners in T & A Oil, and they do not know whether it produced an overall profit or loss. They also urge us to consider the fact that when the well did produce a profit, it only accounted for 1% of Mr. Cook's annual income, and 2.9% of Mr. Spark's income. They contend that the business was more like a tax shelter than a profitable business.

We find these arguments to be unconvincing. According to *Godsey*, *Mid-Century*, and the rule applied in a majority of states, we look to whether the parties were *motivated* by profit, not whether they were ultimately successful in their business. In *Mid-Century* we held that the insured was engaged in a business pursuit because she was motivated by profit, expecting to be compensated for her services, despite her insistence that she rarely got paid. 174 S.W.3d at 240. Moreover, in *Godsey*, the Court specifically noted that "[t]he actual existence of profit . . . is not controlling." 1991 WL 261873, at *3 (citing *Saha v. Aetna Cas. & Sur. Co.*, 427 So.2d 316, 318 (Fla.App. 1983)).

As explained by the Supreme Court of Connecticut, net losses do not render an activity any less a business pursuit:

> In a business pursuit the profit motive, or purpose of profit, is important. Whether there is or is not actual profit is immaterial. Does a pursuit have to be successful from a profit standpoint before it is a business pursuit? If a business suffers a loss, was it not a business? The answers are obvious. Profit motive, not actual profit, makes a pursuit a business pursuit.

*Pacific Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 34, 688 A.2d 319, 323 (1997) (quoting *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974)). In *Saha v. Aetna Cas. & Sur. Co.*, 427 So.2d 316, 318 (Fla. Dist. Ct. App. 1983), which the *Godsey* Court cited approvingly, the Florida Court of Appeals addressed an argument similar to the one urged by Mr. Sparks and Mr. Cook. In that case, a physician had purchased farmland and a herd of cattle basically as a tax shelter, and he argued that because those activities were not profit-producing, they did not constitute a business pursuit. *Id.* The Florida Court rejected his argument, stating that "[t]he absence of a profit does not negate the existence of a business pursuit." *Id.* The Court found that the physician still used the farm to report substantial expenses, depreciation, and deductions on his income tax returns, which ultimately resulted in financial gain. *Id.* Furthermore, as the Texas Supreme Court recently noted, "a profit motive can be inferred from the nature of the activity." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005). When considering whether a mineral lease was a business pursuit, the Texas Court observed that "[o]ne generally does not allow limestone mining with dynamite blasting to occur on his or her property without some expectation of remuneration or monetary gain." *Id. See also Vallas v. Cincinnati Ins. Co.*, 624 So.2d 568, 571 (Ala. 1993) ("we

cannot say that the limited partnership, which was formed to buy and sell investment real property for capital gain, . . . was not a 'business pursuit'").

We similarly conclude that a "business pursuit" only requires a motivation for profit, not any particular degree of success in achieving profitability. A business that suffers a loss is still a business, and a business pursuit that is unsuccessful is nonetheless a business pursuit. Here, Mr. Sparks and Mr. Cook do not deny that their investment in the partnership was for the purpose of earning a profit. Therefore, their activities satisfied the first criteria under *Godsey* and *Mid-Century*, and we turn to the issue of whether their pursuit was a "continued or regular activity."

## B.    Continuity

In order to constitute a business pursuit, the insured must be engaged in a continued or regular activity. *Mid-Century*, 174 S.W.3d at 240 (citing *Godsey*, 1991 WL 261873, at *3). In other words, the activity must be "a customary engagement or a stated occupation" of the insured. *Godsey*, 1991 WL 261873, at *3. The trial court found that "Defendants Sparks and Cook had such a lack of involvement in the oil business at issue that it did not constitute a customary engagement or stated occupation," and therefore they were not engaged in a business pursuit.

Mr. Sparks and Mr. Cook contended that their stated occupations were their positions at Tri-State Delta Chemical, so that their involvement in T & A Oil could not constitute a business pursuit. A minority of courts has held that the term "business pursuits" only includes an insured's principal occupation, rejecting the notion that part-time or supplemental income activities are also business pursuits.[7] For example, in ***Brickell v. United States Fire Ins. Co.***, 436 So.2d 797, 800 (Miss. 1983), the Supreme Court of Mississippi concluded that the term "business pursuit" and its definition as a "trade, profession or occupation" was vague and ambiguous. The insured in that case was employed as the president of an insurance agency, but he also invested in and "took over" a car dealership, eventually acquiring all stock of the corporation. *Id.* at 799. The Mississippi Court concluded that the insured's "business" was that of insurance, so that his insurer was required to defend him in a suit involving the car dealership, despite the existence of a business pursuits exclusion in his policy. *Id.* at 801. *See also **Brown v. Peninsular Fire Ins. Co.***, 171 Ga.App. 507, 508, 320 S.E.2d 208, 209 (1984) (interpreting dictionary definitions to narrowly define each term to include only a principal occupation); ***North Carolina Farm Bureau Mut. Ins. Co. v. Briley***, 127 N.C.App. 442, 448, 491 S.E.2d 656, 660 (1997) (interpreting the narrow definitions in Webster's Dictionary and rejecting the broad definitions in Black's Law Dictionary).

---

[7] At the other end of the spectrum, some courts have held that *any* activity undertaken with a motive for profit constitutes a "business pursuit," whether it is the insured's primary occupation, or a hobby that also produces profit. *See **Wiley v. Travelers Ins. Co.***, 534 P.2d 1293, 1295 (Okla. 1974); ***Hiebert v. Farmers Ins. Co. of Oregon***, 172 Or.App. 13, 18, 18 P.3d 397, 400 (2001) ("'business pursuits' applies to all compensating activities of an insured, including the insured's principal gainful activity or activities and all incidental or occasional ones").

In these jurisdictions that follow the minority rule, then, it appears that insurers must cover losses arising out of an insured's business, even if his or her policy excluded "business pursuits," so long as that business activity does not comprise a majority of the insured's time, or possibly produce the majority of his or her income. As one court observed, if no part-time activity can be a business pursuit, a great number of individuals with interests in part-time businesses will be able to circumvent commercial insurance policies simply by being primarily employed in another business or profession. *Black v. Fireman's Fund Am. Ins. Co.*, 115 Idaho 449, 454, 767 P.2d 824, 829 (Idaho Ct. App. 1989). That court concluded that "legitimizing such an approach would frustrate the primary purpose for providing a business pursuit exclusion to homeowner's insurance policies." *Id.*

We also believe that construing the business pursuits exclusion to only encompass the primary occupation of an insured strains the common understanding of the term "business pursuits," which is not so limited. The majority rule, which we find convincing, is that the term "business pursuits" includes even part-time or supplemental income-producing activities that are carried on continuously or regularly. *See, e.g.*, *Gaynor v. Williams*, 366 So.2d 1243, 1244 (Fla. Dist. Ct. App. 1979); *Ins. Co. of Illinois v. Markogiannakis*, 188 Ill.App.3d 643, 655, 544 N.E.2d 1082, 1090 (1989); *State Auto. Mut. Ins. Co. v. Dolosich*, 135 Ohio App.3d 601, 609, 735 N.E.2d 38, 43 (1999); *State Auto Prop. & Cas. Ins. Co. v. Raynolds*, 357 S.C. 219, 224, 592 S.E.2d 633, 636 (2004); *Hallman*, 159 S.W.3d at 644 (Tex. 2005); *Williams v. State Farm Fire & Cas. Co.*, 180 Wis.2d 221, 229, 509 N.W.2d 294, 297 (Wis. Ct. App. 1993); 9A Steven Plitt et al., *Couch on Ins.* § 128:13 (3d ed. 2006) (stating that a business pursuit is not limited solely to the insured's primary occupation or employment); 7A *Appleman, Ins. Law and Practice* § 4501.11 (Berdal ed. 1979) ("the business need not be the sole occupation, and part-time business activities are excluded"). In reaching this conclusion, several courts have noted that an exclusion denying coverage for business *pursuits*, in the plural form, contemplates that an insured may be engaged in more than one type of business pursuit, and the exclusion is not limited to the insured's primary occupation. *See, e.g.*, *Indus. Indem. Co. v. Goettl*, 138 Ariz. 315, 319, 674 P.2d 869, 873 (Ariz. Ct. App. 1983) ("use of the plural 'pursuits' suggests a more expansive construction"); *Pacific Indem. Ins. Co.*, 240 Conn. at 32, 688 A.2d at 322 ("use of the plural term 'business pursuits' . . . as opposed to the singular term 'business pursuit,' undermines the inference that only the insured's sole or principal occupation or trade is excluded"). Similarly, a Court of Appeals in California observed that by defining a business pursuit as a "trade, profession *or* occupation," the parties contemplated that the insured could be involved in various business activities, and all would be excluded as business pursuits. *State Farm Fire & Cas. Co. v. Drasin*, 152 Cal.App.3d 864, 869, 199 Cal. Rptr. 749 (Cal. Ct. App. 1984). The policies at issue in this case also excluded business *pursuits*, and defined business as a trade, profession, *or* occupation. In addition, the policies had one exclusion for losses caused by providing or failing to provide a "professional service," and another exclusion for losses caused by "business pursuits," which included the insured's trade, profession, or occupation, leading us to interpret "business pursuits" broadly.

The *Godsey* Court described the "continuity" element of the analysis as requiring the activity to be "*a customary engagement or* a stated occupation." 1991 WL 261873, at *3. Thus, an insured

may be customarily engaged in a business pursuit although it is not his stated occupation. The Court further observed that "the actual existence of . . . permanent work is not controlling," and neither is "[t]he amount of effort and time put into a project." *Id.* (citations omitted). Therefore, we believe that the only Tennessee authority addressing this issue is in accordance with the sound majority rule that the business pursuits exclusion is broad enough to encompass even part-time or supplemental income-producing activities that are not the insured's sole or primary occupation.

However, this finding does not end our analysis. Even a part-time or supplemental business activity must be carried on continuously or regularly to be excluded as a business pursuit. It must be at least a "customary" engagement. If the "pursuit" is not regular or continuous, it is not a business, but again, "the actual existence of . . . permanent work is not controlling," and neither is "[t]he amount of effort and time put into a project." *Godsey*, 1991 WL 261873, at*3 (citing *Saha v. Aetna Cas. & Sur. Co.*, 427 So.2d 316, 318 (Fla.App. 1983); *Randolph v. Ackerson*, 108 Mich.App. 746, 310 N.W.2d 865, 866 (1981)). For example, in *Randolph*, 310 N.W.2d at 866, the Michigan Court of Appeals found that a man's purchase of his neighbor's barn and sale of the wood was not a business pursuit because it was of a "singular nature," rather than continuous or regular, when he had never engaged in that type of business activity except on that one occasion. On the other hand, the same court held that a man's operation of a seasonal fireworks stand satisfied the continuity requirement of "business pursuits," even though it was not a permanent venture, because it was not an isolated transaction. *Michigan Millers Mut. Ins. Co. v. Awad*, No. 266842, 2006 WL 1084351, at *3 (Mich. Ct. App. Apr. 25, 2006).

Mr. Sparks and Mr. Cook contend that their involvement in T & A Oil was limited to a single "passive" investment in 1985, when they executed the partnership agreements, and one trip to the oil well for a groundbreaking party. Mr. Sparks also minimizes his involvement in the financial affairs of T & A Oil, characterizing himself as a "paper shuffler." Thus, they claim that they were not customarily "engaged" in a business with regard to T & A Oil. For purposes of this issue, we find that their interpretation of what it means to be engaged in a business is too narrow.

In *Hallman*, 159 S.W.3d at 644, an insured similarly argued to the Texas Supreme Court that she was not customarily engaged in mineral leasing because she had entered into only one lease agreement over ten years prior to the suit. The Court rejected her argument, and we find its reasoning persuasive:

> By narrowly limiting its focus to Hallman's initial execution of the lease, the court of appeals misconstrued the nature of commercial leasing activity. The pleadings establish that the mining activity conducted on Hallman's property pursuant to the lease began in 1995, was ongoing at the time the plaintiffs initiated their suit in 1996, and remained ongoing at the time the plaintiffs filed their sixth amended petition in 2001. Although Hallman executed only one lease, until that lease expires, she is perpetually engaged in the continuous act of leasing her property to the mining company. Thus, the limestone

-13-

> mining lease meets the continuity requirement of the business
> pursuits exclusion.

*Hallman*, 159 S.W.3d at 644. In this case, even though Mr. Sparks and Mr. Cook made only one investment into the partnership, they were continuously involved with T & A Oil thereafter as partners and owners of the business and its operating oil well. It was not necessary for them to be physically operating the oil well in order to be engaged in the business of T & A Oil. We find that Mr. Sparks and Mr. Cook have been customarily and continuously engaged in the business since their initial investment in 1985.

In *Vallas*, 624 So.2d at 571-72, insureds similarly characterized their investment in a partnership as a "passive" investment, but the Supreme Court of Alabama focused on the fact that they had been partners in the business for fifteen years, which was "a continued, extended, or prolonged undertaking for gain or profit." *See also **Drasin***, 152 Cal.App.3d at 870 (considering the length of time the insured was engaged in a partnership). In ***Becker v. State Farm Fire & Cas. Co.***, 664 F.Supp. 460, 463 (N.D.Cal. 1987), insureds referred to their one-time investment in a movie theater as a "passive" investment because they had hired someone else to manage the theater. The court rejected their claim that they were engaged in a "one-time deal" because the business itself was an ongoing activity. *Id.* Another court found that a joint venturer who described himself as a "passive" investor became an owner of the business's property and was continuously exposed to liability as the owner, which demonstrated the "continuity" of his business pursuit. ***Williams v. State Farm Fire & Cas. Co.***, 180 Wis.2d 221, 229, 509 N.W.2d 294, 297 (Wis. Ct. App. 1993). We agree with the reasoning of these courts and find that Mr. Sparks and Mr. Cook were continuously and regularly engaged in T & A Oil at all times relevant to this proceeding, for purposes of the business pursuits exclusions in their insurance policies. They have been partners and owners of the business since 1985. This was not an isolated, singular transaction or a "one-time" deal, but a continuous and ongoing business pursuit.

## V. CONCLUSION

We conclude that the insureds in this case did not have a reasonable expectation of coverage under these policies for accidents arising out of T & A Oil's operations, and State Farm surely did not intend to cover such losses. The Eastern Section of this Court has noted that the existence of business pursuits on insured premises is a factor that would naturally and reasonably influence an insurer's judgment, and this is a risk that an insurer is entitled to assess when issuing a homeowner's policy. ***Vermont Mut. Ins. Co. v. Chiu***, 21 S.W.3d 232, 237 (Tenn. Ct. App. 2000). The purpose of a business pursuits exclusion is to "delete coverage which is not essential to the purchasers of the policy and which would normally require specialized underwriting and rating,[8] and thus keeps

---

[8] The homeowner's policy applications in this case provided, in the last paragraph above the applicant's signature, that the "coverages, options, and endorsements described above have been explained to me, and I want to purchase only those that are marked as accepted and for which a premium is shown." The "additional coverage" option

(continued...)

premium rates at a reasonable level." ***Grossman v. American Family Mut. Ins. Co.***, 461 N.W.2d 489, 495 (Minn. Ct. App. 1990) (quoting *Krings v. Safeco Ins. Co. of America*, 6 Kan.App.2d 391, 393, 628 P.2d 1071, 1074 (Kan. Ct. App. 1981)). Premiums for policies would be inflated unreasonably if the personal liability and homeowner's insurance pool were required to assume risks attendant upon commercial ventures such as this. *See **id.***

In sum, we find that the rules followed by the majority of states in defining "business pursuits" lead to the most reasonable interpretation of the exclusion and best carry out the intention of the parties. In addition, the rules we have applied today are in accordance with the only existing Tennessee case law addressing this issue. The business pursuits exclusion contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit. The activity must be the stated occupation or a customary engagement of the insured. However, the pursuit need only be motivated by profit, and it need not be the insured's sole or primary means of earning income. Applying those principles to this case, Mr. Sparks and Mr. Cook's involvement with T & A Oil clearly constituted a business pursuit. Therefore, there is no coverage under their homeowners' and umbrella policies for losses arising out of such involvement, and State Farm has no duty to defend or indemnify the insureds in the Arkansas litigation.

For the aforementioned reasons, we reverse the decision of the circuit court. Costs of this appeal are taxed to the appellees, Darrell Sparks and Randy Cook, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

----

[8](...continued)
for "Business Pursuits" is not marked.